**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Levon Mason DUMONT, Kareem A. Nagib, and Walter Premchand Atri, Defendants–Appellants.**

**Nos. 90–2149, 90–3566 and 90–3632.**

United States Court of Appeals, Seventh Circuit.

Argued May 6, 1991.

Decided June 25, 1991.

Rehearing Denied July 16, 1991.

Matthew L. Jacobs, Asst. U.S. Atty., Milwaukee, Wis., for U.S. in Nos. 90–2149 and 90–3632.

Stephen M. Glynn, James A. Walrath, Shellow, Shellow & Glynn, Milwaukee, Wis., for Levon Mason Dumont.

Paul Kanter, Asst. U.S. Atty., Milwaukee, Wis., for U.S. in No. 90–3566.

Frederick L. Zievers, Kenosha, Wis., for Kareem A. Nagib.

Dennis J. Clark, Plunkett & Cooney, Detroit, Mich., for Walter Atri.

Before CUMMINGS and EASTERBROOK, Circuit Judges, and WILL, Senior District Judge.*

* Hon. Hubert L. Will, of the Northern District of Illinois, sitting by designation.

EASTERBROOK, Circuit Judge.

The Grateful Dead play rock music. Their style, often called "acid rock" because it mimics the effects some persons obtain after using LSD (lysergic acid diethylamide), is attractive to acid-heads. Wherever the Dead appear, there is demand for LSD in the audience. Demand induces supply. Vendors follow the band around the country; law enforcement officials follow the vendors. *Chapman v. United States,* — U.S. —, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991); *United States v. Ruklick,* 919 F.2d 95 (8th Cir. 1990); *Tennessee v. Elphee,* 1989 WL 19159, 1989 Tenn.Crim.App. LEXIS 163, and this case all involve prosecutions of the Grateful Dead's camp followers. Cf. *Jacobson v. Seattle,* 98 Wash.2d 668, 658 P.2d 653 (1983) (searches of concertgoers).

Levon Dumont, Kareem Nagib, and Walter Atri were nabbed after a shipment of LSD from Portland, Maine (where the Grateful Dead had just given a concert) to Milwaukee, Wisconsin (the Dead's next venue) was intercepted in transit. Dumont and Nagib shipped the package via United Airlines. The clerk became suspicious when the address written on the package did not tally with the address Nagib gave to the carrier (Nagib was listed as recipient), and Dumont "cured" the problem by writing in a new consignee. United opened the package to make sure it was not being induced to transport something that might be hazardous to its passengers. It found dirty clothing plus 620 sheets of colored paper, each containing 100 doses of LSD, and more than five pounds of hallucinogenic mushrooms. (To be precise, 2,431 grams of mushrooms containing the forbidden substances psilocybin and psilocin.) When Dumont appeared in Milwaukee to claim the package, he found a drug agent disguised as a United employee. The "baggage agent" told Dumont that the package had come open in flight and that he recognized the contents and would report the shipment to the police unless adequately compensated for silence. Dumont asked how much the agent wanted; the agent offered to cooperate for about $100. Dumont left and spoke with Atri, who was standing outside United's office. Dumont then returned and gave the agent $300 in $20 bills. Other agents soon arrested Dumont and Atri; they found $28,000 on Dumont's person, but no additional drugs. The next day agents arrested Nagib as he arrived in Milwaukee. They found in his luggage two rolls of tape matching the tape used to seal the packages of LSD and mushrooms. For a variety of offenses under the drug statutes and the Travel Act, Nagib received 235 months' imprisonment, Dumont 188 months, and Atri 151 months.

■ Nagib's appeal presents a jurisdictional problem. Sentence was imposed and judgment entered on October 1, 1990. Nagib had ten days to appeal. Fed.R.App.P. 4(b). On the tenth day Nagib's lawyer filed, not a notice of appeal, but a motion to reconsider the sentence—the kind of motion that used to be authorized by Fed.R. Crim.P. 35(b) but has not been authorized by any rule since the sentencing guidelines went into force in November 1987. (The current version of Rule 35(b) allows only the prosecution to seek a reduction in sentence.) The district judge denied this motion, and Nagib's lawyer recognized that he was in a fix. Rule 4(b) provides that motions in arrest of judgment or for a new trial stop the clock; motions seeking relief that the district judge no longer is authorized to provide are not listed in Rule 4(b) and do not affect the time to appeal. Although a timely petition for rehearing extends the time to take a criminal appeal even when no rule expressly prescribes that effect, *United States v. Dieter,* 429 U.S. 6, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976); *United States v. Healy,* 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964), the assumption behind *Dieter* and *Healy* was that the judge could have granted the motion. The motion stops the clock so that the court may correct its own errors, averting the need for appeal. A motion asking the court to do something it is powerless to do has no similar benefits and so does not stop the time.

On October 29 Nagib's lawyer asked the district judge to extend the time to appeal, pleading ignorance of the rules. Although

we have said several times that ignorance of settled law is not excusable neglect, see *Lorenzen v. Employees Retirement Plan*, 896 F.2d 228, 232 (7th Cir.1990); *Powell v. Starwalt*, 866 F.2d 964 (7th Cir.1989); *Redfield v. Continental Casualty Co.*, 818 F.2d 596, 602 (7th Cir.1987); *EDC, Inc. v. Navistar International Transportation Corp.*, 915 F.2d 1082 (7th Cir.1990) (chambers opinion), the district judge granted the motion. On November 7, 1990, the judge entered an order providing that "defendant shall have ten (10) days from the date of this order to file a notice of appeal." Nagib's lawyer finally lodged a notice of appeal on November 15, 1990.

Unlike Fed.R.App.P. 4(a)(5), which says that in a civil case no extension "shall exceed 30 days past such prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later", Rule 4(b) says that the court may extend the time "for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision." On the criminal side, there is no provision for an additional 10 days after entry of the order. The district judge's order was therefore unauthorized by Rule 4(b), independent of the difficulty in establishing "excusable neglect". *United States v. Hoye*, 548 F.2d 1271 (6th Cir. 1977); *Smith v. United States*, 425 F.2d 173 (9th Cir.1970). Cf. Fed.R.App.P. 26(b) (court may not further enlarge the time for taking an appeal). Thirty days, added to the ten "otherwise prescribed by this subdivision", is November 10, 1990, five days before Nagib filed his notice of appeal. The appeal is therefore untimely, and as the limit established by Rule 4(b) is jurisdictional, *United States v. Robinson*, 361 U.S. 220, 229, 80 S.Ct. 282, 288, 4 L.Ed.2d 259 (1960), Nagib's appeal must be dismissed.

A brief word about the "unique circumstance" doctrine of *Thompson v. INS*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964), is in order. *Thompson* holds that an error by the district court in setting the time for filing a motion for reconsideration, leading counsel to file the motion too late to postpone the running of the time for appeal, could in some "unique" circum-

stances authorize the court to hear appeals that would have been timely had the court's advice been correct. *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 179, 109 S.Ct. 987, 993, 103 L.Ed.2d 146 (1989), together with the equal division of our court in *Varhol v. National R.R. Passenger Corp.*, 909 F.2d 1557 (7th Cir.1990) (in banc), show that the doctrine is not beyond question. So far as we can tell, however, *Thompson* has never been invoked to allow a district court to extend the time for appeal by more than the maximum specified by Rule 4.

*Thompson* protects litigants from the consequences of district courts' gaffes. Nagib has only his lawyer to blame. Counsel could have filed a notice of appeal on October 11. When counsel recognized that there is no longer any such thing as a motion to reconsider a sentence, he could have filed a notice of appeal on October 29, together with the motion to extend the time. (Nagib does not contend that the motion for an extension of time counts as a notice of appeal under Fed.R.App.P. 3(c). Cf. *Bell v. Mizell*, 931 F.2d 444 (7th Cir. 1991); *Hoye*. Accordingly we bypass this possibility.) It was counsel's inexplicable failure to file a notice of appeal any time on or before November 10—even though he could have determined from the briefest reading of Rule 4(b) that the district court lacked power to extend the time past then—that created this mess. Although the order of November 7 might have lulled counsel during the last three days of the time allowed by the rule, it did not mislead counsel during the first 37 days. Judge Stadtmueller gave counsel what he asked for, and *Green v. Bisby*, 869 F.2d 1070, 1072 (7th Cir.1989), holds that granting a motion for more time is not the sort of misleading judicial statement that allows a court to invoke *Thompson*. Nagib's appeal is ineffectual. (Lest all of this be a prelude to a collateral attack based on ineffective assistance of counsel, we add that the appeal was going nowhere on the merits. We would not have reversed even were we possessed of jurisdiction.)

■ Dumont's sole argument is that neither statute nor Constitution allows a district judge to include the weight of the paper when determining the sentence for possession or sale of LSD. That contention has been rejected authoritatively. *Chapman v. United States,* — U.S. —, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), affirming *United States v. Marshall,* 908 F.2d 1312 (7th Cir.1990) (in banc).

■ Atri presses contentions in addition to the defunct challenge to the LSD sentencing scheme. By far the strongest is his argument that the evidence is insufficient. The jury convicted Atri of conspiring with Dumont and Nagib to possess the drugs with intent to peddle them and of traveling in interstate commerce to promote this plan. The evidence is thin. Atri did not enter the agents' field of vision until Dumont briefly consulted with him outside the baggage office in Milwaukee. Atri carried no drugs or drug paraphernalia; his fingerprints were not on the drugs shipped from Portland to Milwaukee. This is too scant, he says, to show that he knew what was in the box, let alone that he agreed with Dumont to distribute LSD and traveled to Milwaukee intending to do this.

Thin this proof may be, but when read together with all reasonable inferences in the light most favorable to the verdict, it supplies substantial evidence of Atri's knowing participation. See *United States v. Durrive,* 902 F.2d 1221 (7th Cir.1990). Atri traveled with Dumont from Portland to Milwaukee; Atri bought the tickets while Dumont and Nagib shipped the package. Once on the ground in Milwaukee, Atri accompanied Dumont to the baggage counter. Atri and Dumont conferred after the "baggage agent" demanded a bribe. Two officers saw Atri pass money to Dumont, who presently paid off the "baggage agent". Other evidence showed prior dealings among Atri, Dumont, and Nagib (e.g., Atri and Dumont jointly purchased a van, which they later sold to Nagib), and Atri admitted being an experienced user of LSD. The combination of joint travel, conversation at a critical juncture, and provision of funds for a bribe is enough to support an inference that Atri knew what was afoot and was in Milwaukee to promote the sale of the drugs. Atri remarks that this makes no sense: why should Dumont come to him for a few $20 bills when Dumont was carrying $28,000? Yet Dumont's bankroll was tied up in bundles in his pockets. A jury might infer that Dumont asked Atri for money rather than trying to fumble with wads of cash in a busy terminal. The prosecution's story hangs together, and we will not disturb the jury's resolution of the dispute.

■ Nagib testified at trial. When on cross-examination the prosecutor began asking Nagib questions about his possession of drugs on other occasions (questions the prosecutor justified as efforts to show Nagib's knowledge of the contents of the package), Nagib refused to answer—despite the district court's proper instruction that he must, having waived his fifth amendment privilege by testifying. *Brown v. United States,* 356 U.S. 148, 155–56, 78 S.Ct. 622, 627, 2 L.Ed.2d 589 (1958); *United States v. Ely,* 910 F.2d 455, 458 (7th Cir.1990). Nagib still refused to speak. Rather than hold Nagib in contempt, the district judge told the jury that it could infer that truthful answers would have been damaging to Nagib. Atri contends that the district court should have severed his trial from Nagib's, to spare him from any spillover effects. Requests of this kind are addressed to the district judge's reasoned discretion, *United States v. Caliendo,* 910 F.2d 429, 437 (7th Cir.1990), which the court did not abuse in denying the motion. The instructions to the jury did not allow an inference adverse to Atri, who was no worse off than he would have been had Nagib answered truthfully. Atri, who conceded possessing and using LSD frequently, cannot say that this episode tarred him unduly.

■ Finally we consider Atri's objections to his sentence. One is beyond our jurisdiction under *United States v. Franz,* 886 F.2d 973 (7th Cir.1989). Although we may review a district court's decision that it lacked authority to depart from the guidelines, *United States v. Poff,* 926 F.2d 588,

590–91 (7th Cir.1991) (in banc), we do not read Judge Stadtmueller as doubting his authority to depart (although he avowedly doubted the wisdom of doing so). The other is that the judge should have treated Atri as a "minimal" participant (calling for a four-level reduction) rather than a "minor" one (yielding only a two-level reduction). See U.S.S.G. 3B1.2. The judge called Atri's role "minimal" when sentencing another defendant; this is dispositive, Atri insists, when his own turn came. Why? Extemporaneous speech by a judge who may not have been paying attention to nuance does not preclude a more considered decision later. Review of characterization in sentencing is deferential, see *Marshall*, 908 F.2d at 1326, and the judge was not obliged to treat Atri as the kind of peripheral figure for which the four-point adjustment is designed.

Nagib's appeal, No. 90–3566, is dismissed for want of jurisdiction. On the appeals of Dumont and Atri, the judgments are affirmed.