**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kareem A. NAGIB, Defendant–Appellant.**

No. 93–4018.

United States Court of Appeals, Seventh Circuit.

Decided June 6, 1995.

Matthew L. Jacobs, Asst. U.S. Atty. (argued), Office of U.S. Atty., Milwaukee, WI, for plaintiff-appellee U.S.

Robert L. Graham, Stephen L. Wood (argued), Stephen A.K. Palmer, Jenner & Block, Chicago, IL, for defendant-appellant Kareem A. Nagib.

Before POSNER, Chief Judge, and WELLFORD * and EASTERBROOK, Circuit Judges.

WELLFORD, Circuit Judge.

## I. JURISDICTION

The defendant, Kareem Nagib, was convicted of drug trafficking on October 1, 1990, but he failed to file a timely notice of appeal as required by Federal Rule of Appellate Procedure 4(b). *See* 936 F.2d 292, 295 (7th Cir.), *cert. denied,* 502 U.S. 950, 112 S.Ct.

399, 116 L.Ed.2d 349 (1991). Since Rule 4(b)'s time limit is jurisdictional, we dismissed his appeal. *Id.* Undeterred, Nagib filed a motion under 28 U.S.C. § 2255, collaterally attacking the district court's judgment of conviction. Nagib argued before the district court that he had been denied effective assistance of counsel when Mr. Frederick Zievers, his first lawyer, mistakenly filed a motion to reconsider the sentence instead of a notice of appeal. Such a motion no longer exists in the advent of Guidelines sentencing. The district court granted Nagib's motion and ordered a new appeal. We again declined to reach the merits of Nagib's appeal because the district court failed to make a finding that Nagib requested, in a timely manner, that his lawyer file a notice of appeal. *See* 44 F.3d 619, 622–23 (7th Cir.1995). Absent such a finding or definitive proof in the record, we were unable to determine whether Nagib's failure to file a timely notice of appeal was due solely to his lawyer's error or perhaps, in part, his own negligence. *Id.* at 622. This factual determination was crucial to our exercise of appellate jurisdiction because if the untimely appeal was the result of Nagib's own conduct, then Nagib could not demonstrate the ineffective assistance of counsel needed to justify the granting of a new appeal. Accordingly, we remanded to the district court to make a specific finding as to whether Nagib instructed his counsel, in a timely manner, to file a notice of appeal. *Id.* at 623.

█ Nagib now asks us to reconsider that decision. We believe Nagib's motion has merit in light of the government's concession that it will not, and cannot, offer proof to contradict Nagib's contention that he instructed Mr. Zievers, in a timely manner, to file a notice of appeal. Brief of Appellee at 6. As we noted in our previous opinion, it is the district court's role to determine whether a defendant requested, in a timely manner, that his lawyer file a notice of appeal. *See 44* F.3d at 622 (citing *Castellanos v. United States,* 26 F.3d 717, 720 (7th Cir.1994); *United States v. Mosley,* 967 F.2d 242, 244 (7th

---

* Hon. Harry W. Wellford, United States Circuit Judge for the Sixth Circuit, sitting by designa-
tion.

Cir.1992)). Nonetheless, since the government cannot contest the allegations of the defendant and his lawyer, there is nothing for the district court to resolve. We will not require the district court to engage in a pointless exercise. Thus, it is quite apparent that Nagib instructed his lawyer to appeal in a timely manner. Since Nagib was denied appeal solely because of lawyer error, the question remains whether that error was sufficient to constitute ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ *Strickland* requires a showing 1) of deficient counsel performance, 2) which prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064. We have little difficulty finding that Mr. Zievers' performance was deficient. Filing the wrong papers or a non-existent motion under federal practice clearly qualifies as deficient attorney performance. A finding of deficient performance does not end the inquiry; there is still the matter of demonstrated prejudice. Nevertheless, a defendant seeking to demonstrate ineffective assistance is relieved of the heavy burden to show prejudice when there has been an "[a]ctual or constructive denial of the assistance of counsel altogether." *Id.* at 692, 104 S.Ct. at 2067. Accordingly, in *Castellanos v. United States*, 26 F.3d 717 (7th Cir.1994), we held that a defendant was not required to show prejudice under *Strickland* if he instructed his lawyer to appeal and his lawyer failed to do so. *Id.* at 718. We stated: "If the defendant told his lawyer to appeal, and the lawyer dropped the ball, then the defendant has been deprived, not of effective assistance of counsel, but of *any* assistance of counsel on appeal. Abandonment is a *per se* violation of the [S]ixth [A]mendment." *Id.*

■ In our previous opinion, we declined to reach any conclusions about whether there was a difference under *Castellanos* between a lawyer failing to file a *timely* appeal and failing to file *at all.* *See* 44 F.3d at 621–22. Today, we expressly hold that there is no meaningful distinction for the purpose of a *Strickland* analysis. *See United States v. Horodner*, 993 F.2d 191, 195 (9th Cir.1993) (holding that a defendant does not have to

show prejudice under *Strickland* because "[t]he legal effect is the same[ ]" regardless of whether the lawyer files untimely, or fails to file at all). *Castellanos* controls this case, because Mr. Zievers' error denied Nagib the assistance of a lawyer's services on direct appeal. *Castellanos*, 26 F.3d at 718. Consequently, Nagib is not required to demonstrate prejudice under *Strickland* and his lawyer's failure to file a timely notice of appeal constituted *per se* ineffective assistance of counsel. As a result, Nagib is entitled to a new appeal.

## II. THE MERITS

Nagib, and his co-defendants, Levon Dumont and Walter Atri, travelled across the country following the band, The Grateful Dead, frequently sharing lodging and transportation.

On September 14, 1989, Nagib and his co-defendants shared a cab to the Portland, Maine airport. While Nagib waited outside, Atri purchased airline tickets for himself and Dumont, who pursued arrangements to ship a cardboard box to Milwaukee. The shipping agent at the airport, Sandy Prox, asked Dumont for identification and he tendered his driver's license. Dumont identified himself as the shipper, but he gave Nagib's name as the addressee. When Prox asked about the contents of the box, Dumont told her that the box contained a backpack and a lamp. Prox then indicated that she might have to open the box to check for any flammable items. Dumont responded that he would check with a friend to verify the contents; he then left the counter and summoned Nagib, who was standing nearby. Dumont and Nagib returned to the counter, whereupon Dumont told the agent that "they had not put the lamp in the box." Prox then requested a Milwaukee shipping address, and Nagib provided Prox with a Milwaukee address for a Sheldon Boren. While completing the necessary shipping forms, Prox indicated that she intended to x-ray the package to determine whether flammable materials were enclosed. Neither Dumont nor Nagib objected. Nagib's name, however, appeared on the shipping papers.

While Dumont and Atri boarded a flight to Milwaukee, Prox did x-ray the package. Unable to determine its contents, Prox and another employee, Lisa Chavaree, decided to open the box. Upon finding LSD and dried mushrooms, Prox notified the Portland Police Department, who, in turn, contacted the Milwaukee Police Department. Authorities then shipped the box under a controlled delivery to Milwaukee where local police waited for the arrival of the intended recipient. When Dumont attempted to retrieve the box, a Milwaukee police officer, posing as an airline employee, told Dumont that the box came open during the flight. The officer explained that he would keep quiet about the drugs in the box if Dumont gave him money. Dumont walked over to Atri, they briefly conversed, then Atri handed Dumont $300.00 in $20 bills. Dumont gave the money to the undercover officer, whereupon police arrested Dumont and Atri. Found on Dumont's person were large bundles of currency totalling approximately $28,000.00.

The next day, United Airlines employees observed Nagib at the Portland airport rushing to board a flight bound for Milwaukee. The employees notified the Portland Police Department, which again notified the Milwaukee Police Department. Upon his arrival in Milwaukee, the police arrested Nagib. The police also seized a bag at the time of the defendant's arrest which contained women's clothing and other personal items, along with the defendant's passport, a pair of scissors, and two rolls of tape similar to the tape used to seal the package containing the LSD and hallucinogenic mushrooms. The police could not identify the bag as belonging to Nagib, but it did contain some of his possessions.

A Milwaukee grand jury promptly indicted Dumont, Atri and the defendant, charging all three with conspiring to distribute LSD and conspiring to distribute a substance containing Psilocybin in violation of 21 U.S.C. §§ 846, 841(a)(1) and 18 U.S.C. § 2 (count one). In addition, the grand jury charged Dumont and Atri with travelling in interstate commerce to carry on a business enterprise involving a controlled substance.

During trial, Dumont changed his plea to guilty as to count one of the indictment, reserving the right to contest the manner in which the sentencing court determined the weight of the LSD for purposes of calculating his Guidelines range and the applicability of any minimum, mandatory sentencing provision. Defendant and Atri, however, proceeded with trial. The jury returned a verdict of guilty against defendant, who was sentenced to a prison term of 235 months. The jury also convicted Atri on both counts.

Defendant raises two issues on appeal: (1) whether the trial court committed reversible error when it refused to admit Dumont's change of plea transcript; and (2) whether the district court committed reversible error by allowing the government to question defendant about a prior bad act.[1]

## III. DUMONT'S TESTIMONY AT HIS CHANGE OF PLEA HEARING

During trial, the district court held a change of plea hearing and the court questioned co-defendant Dumont about his involvement in the charged conspiracy. When asked to describe the nature of his actions, Dumont responded that he shipped a box containing LSD from Portland, Maine, to Milwaukee, Wisconsin, with the intent of delivering the LSD to a Jerry Garcia concert. When asked where he got the LSD, Dumont replied, "from California." Dumont did not identify the persons who assisted him in shipping the drugs from Portland to Milwaukee. He responded to an inquiry as to whether others were involved as follows: "There were people like when I would get to the show that they would know that, that

1. In our first opinion dismissing Nagib's appeal as untimely, we noted that the "appeal was going nowhere on the merits. We would not have reversed even were we possessed of jurisdiction." See 936 F.2d at 295. This statement was dictum and not determinative of the issues now raised by defendant Nagib. Accordingly, we do not deem our statement about the merits to be the law of the case. Indeed, we had no jurisdiction to consider the merits. We did not discuss the errors assigned by Nagib save in one minor respect (*i.e.*, tangentially with regard to his taking the Fifth Amendment in response to two questions posed by the prosecutor relating to another drug episode). *Id.* at 296.

there was LSD available if they needed it, and then they would take it and resell it to somebody else. There were other people." He also added "that these people travelled from concert to concert."

When called upon, the prosecutor presented his version of the offense conduct. The district court admonished Dumont to listen carefully to the prosecutor's version of events and, at the conclusion of his remarks, to indicate whether there was any part of the proof to which he took exception. During his offer of proof, the prosecutor made numerous representations about the statements made by Dumont and Prox at the airline counter in Portland. Specifically, the prosecutor stated that the proof would show defendant returned with Dumont to the counter and that the defendant stated "there was no lamp in the box, that there was either women's clothes or CD or something innocuous in there." The prosecution also stated that Prox "needed an address for someone in Milwaukee" and that defendant "looked into his address book and provided her with an address of another individual who he said lived in Milwaukee." After the prosecutor completed its offer of proof, Dumont stated that "I agree to the majority of it. There's a couple little things that are a little bit different." Dumont added:

Well, as far as the conversation with the United Airline employee when I went to drop off the package, I'm the one who said there was no lamp in the box and I'm the one who said that there might be a disc player in the box. And she said that she would have to search the box. I think, I'm not quite sure, I don't quite remember if I put Kareem Nagib as the person picking it up because I was the one that was going to pick it up.

I'm not sure if I did that or if he did that when I went out because, see, when she said she had to search the package I sort of freaked out and I had to come up with something to like make sure she didn't do that. So I said, hold on, I'll be right back. And I went out and I said—I asked Kareem if he had a Milwaukee address because I think she said that before I went and walked out.

He said that she said that after I walked out. Like I walked out, came back, and then she said, do you have a Milwaukee address? But I remember walking out and saying, Kareem, do you have a Milwaukee address? And he had a black address book in his pocket and he pulled one out and he said, yeah. And then I thought up the scheme of—well, he said, there's—and then I think I said—well, he said, there's no lamp in the box.

And she said, oh, okay, well, I'll just have to X-ray it. But besides that, everything else—I can't say what the police did and all that, but as far as what I did that's all right.

At trial, Nagib sought to admit Dumont's change of plea transcript under Federal Rule of Evidence 804(b)(3). The district court held that Dumont's transcript was inadmissible, relying upon *United States v. Powell,* 894 F.2d 895, 901 (7th Cir.), *cert. denied,* 495 U.S. 939, 110 S.Ct. 2189, 109 L.Ed.2d 517 (1990) (holding that a co-conspirator's plea hearing transcript is inadmissible under Rule 804(b)(1) because the government does not have a motive to develop the co-conspirator's testimony on cross-examination at the plea hearing). *Powell,* however, specifically reserved ruling on whether a plea transcript would be admissible under Rule 804(b)(3). *Id.* at 901 n. 5.

■ Though Rule 802 prohibits the admission of hearsay statements, Rule 804 provides exceptions to the general rule when the declarant is unavailable to testify. Fed. R.Evid. 804(a). One of those exceptions is for statements against the declarant's penal interest; Rule 804(b)(3) allows the admission of

[a] statement which was at the time of its making so far ... tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

FED.R.EVID. 804(b)(3). Under Rule 804(b)(3), the proponent of the out-of-court statement must demonstrate that the declarant is unavailable to testify and that the statement was against the declarant's penal interest. *United States v. Groce*, 999 F.2d 1189, 1190 (7th Cir.1993). The second sentence of Rule 804(b)(3) is of particular importance in this case, because it *expressly* requires the exclusion of out-of-court statements offered to exculpate the accused *unless* there are corroborating circumstances which buttress the trustworthiness of the statement. *See, e.g., United States v. Williams*, 738 F.2d 172, 178 (7th Cir.1984) (holding that when a defendant seeks to offer an exculpatory out-of-court statement under Rule 804(b)(3) it must be supported by corroborating circumstances to qualify for admission); *United States v. Silverstein*, 732 F.2d 1338, 1346 (7th Cir.1984) (requiring corroborating circumstances to support admission of exculpating hearsay statement offered by defendant), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985).[2]

The government concedes that Dumont, through his counsel, asserted his Fifth Amendment privilege against self-incrimination and was therefore unavailable to testify. FED.R.EVID. 804(a)(1). The government, however, disputes whether Dumont's statements were against his penal interest and whether there were sufficient corroborating circumstances to justify admission under the second sentence of Rule 804(b)(3).

■ Unlike the district court, our interpretation of Rule 804(b)(3) is informed by the Supreme Court's recent decision in *Williamson v. United States*, — U.S. —, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), which held that Rule 804(b)(3) does not allow the admission of self-exculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. We take special notice of the following observations by the *Williamson* Court:

> The question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest "that a reasonable person in the declarant's position would not have made the statement unless believing it to be true," and this question can only be answered in light of all the surrounding circumstances.

*Id.* — U.S. at —, 114 S.Ct. at 2437 (quoting FED.R.EVID. 804(b)(3)). In *Carson v. Peters*, 42 F.3d 384, 386 (7th Cir.1994), we noted that, after *Williamson*, each portion of the proffered out-of-court statement must be examined to determine whether it tended to subject the declarant to criminal liability. A statement may satisfy this requirement if it would be probative at trial against the declarant. *United States v. Garcia*, 897 F.2d 1413, 1420 (7th Cir.1990) ("*Garcia I*").

■ We believe that, in this case, all of Dumont's statements were against his penal interest. Dumont admitted that he delivered a package which contained LSD for air transportation. Dumont also admitted that he intended to take the package to a concert in Milwaukee and to be involved in a conspiracy to distribute the LSD. Dumont further admitted that he picked up the LSD from California and delivered it to Portland, Maine. Dumont also stated that there were other people involved with him in the distribution of the LSD. Dumont clarified for the court certain errors he perceived in the prosecution's offer of proof. First, Dumont indicated that he, rather than the defendant,

---

2. In *United States v. Garcia*, 897 F.2d 1413, 1420 (7th Cir.1990) ("*Garcia I*"), we adopted the United States Court of Appeals for the Fifth Circuit's three prong test to determine when hearsay statements are admissible under Rule 804(b)(3). *See United States v. Alvarez*, 584 F.2d 694, 699–701 (5th Cir.1978). In doing so, *Garcia I* held that the requirement of corroborating circumstances that is expressly required for exculpatory statements by the second sentence of Rule 804(b)(3) also applied to inculpatory statements offered by the government under the first sentence of the Rule. *Garcia I*, 897 F.2d at 1420. In the Supreme Court's recent decision in *Wil-* *liamson v. United States*, — U.S. —, —, 114 S.Ct. 2431, 2437, 129 L.Ed.2d 476 (1994), the Court cited *Alvarez* but declined to resolve whether an inculpatory hearsay statement also requires corroborating circumstances. Because *Garcia I* and *Williamson* both involved out-of-court statements offered to inculpate the defendant, rather than *exculpatory* statements as in the case at bar, we need not resolve whether *Williamson* affects our holding in *Garcia*. *See Carson v. Peters*, 42 F.3d 384, 386 (7th Cir.1994) (noting that *Williamson* did not involve exculpatory hearsay statements offered by the accused under the second sentence of Rule 804(b)(3)).

made the statements to the United Airlines employee regarding the contents of the package. Second, Dumont admitted that he recruited defendant to provide him not only with the Milwaukee address, but to support his story that there was no lamp in the box. In sum, Dumont's statements clearly indicated his involvement in a conspiracy and the likelihood of a managerial or supervisory role. We have previously noted that a "[declarant's] statements implicating himself and [another] in the transportation of [drugs] and the possible involvement in a larger conspiracy surely would tend to subject [declarant] to criminal liability." *Id.*

■ Having established that all relevant statements were against Dumont's penal interest as well as Dumont's unavailability at trial, the only remaining issue is whether the truth of these statements were properly corroborated. Rule 804(b)(3) requires that corroborating circumstances clearly indicate the trustworthiness of a statement against interest. *Carson*, 42 F.3d at 386. Ordinarily, a trial judge has considerable discretion in determining whether hearsay statements contain the necessary guarantees of trustworthiness. In this case, however, the judge only examined the trustworthiness as it applied to Rule 804(b)(1), applying a far different analysis. In *United States v. Garcia*, 986 F.2d 1135, 1140 (7th Cir.1993) ("*Garcia II* "), we listed several factors to be considered when determining whether corroborating circumstances exist for the purposes of Rule 804(b)(3). First, a district court must look to "the relationship between the confessing party and the exculpated party." *Id.* Second, the court must consider whether the confessor made a voluntary statement after being advised of his *Miranda* rights. *Id.* Third, the court must determine whether there is any evidence that the statement was made in order to curry favor with authorities. *Id.*

The government points out that defendant knew Dumont personally and that he called Dumont by his first name, or "Frank." The government also notes that defendant and Dumont travelled to a number of Grateful Dead and Jerry Garcia concerts together. The government, therefore, contends that because defendant and Dumont knew each other for some time, it is likely that Dumont fabricated his story for Nagib's benefit. Defendant, on the other hand, argues that although he and Dumont were friends, there is no evidence that Dumont was motivated to exonerate defendant. Nagib maintains that Dumont could have, but did not, provide exonerating statements for defendant Atri, to whom Dumont arguably had closer ties. Defendant also argues that Dumont did not volunteer his exculpatory statements, but rather corrected the government's version of the facts. The government does not address the voluntary nature of the statements, but it is clear from the record that Dumont was aware of his rights, had counsel present, and voluntarily made his statements to the court. In addition, there is no indication in the record that Dumont attempted to curry favor with the authorities when making his statement at sentencing. There is no record of any plea agreement or downward departure for cooperation. Thus, we find that Dumont's statements bore sufficient indicia of reliability to justify admission under Rule 804(b)(3).

■ Applying the standards set forth in *Williamson*, we are persuaded that, "in light of all the surrounding circumstances," Dumont's statements at his change of plea hearing were "sufficiently against [his] penal interest" that they should have been admitted. *Williamson*, —— U.S. at ——, 114 S.Ct. at 2437. The trial court's exclusion of the plea hearing testimony could be harmless error, but "[o]nly if we are convinced that the error did not influence the jury or had a very slight effect, and can so say with fair assurance." *United States v. Zapata*, 871 F.2d 616, 622 (7th Cir.1989).

In *Garcia II*, we concluded that denying the jury the opportunity to hear the exculpatory statements had more than a "slight effect" on the verdict. *Garcia II*, 986 F.2d at 1141. Specifically, we noted that Garcia's only defense was that he was unaware of the marijuana's presence. *Id.* We further noted that evidence of Garcia's guilt was rather thin. *Id.* Here, the district court described the government's proof against Nagib as "not, frankly, the strongest case in the world." As in *Garcia II*, Nagib's only de-

fense was that he was unaware of the contents of the package. Whether defendant ever made any statements regarding the contents of the package was in question. Dumont indicated that he was the individual who stated that there was no lamp in the box. Other witnesses acknowledged that Dumont made these statements. Defendant maintains that the exclusion of Dumont's testimony prevented him from arguing that Dumont admitted, in his own words, that he involved defendant in order that he might deceive the United Airlines employee about the contents of the package. The testimony of a co-defendant, who himself confessed to planning the shipment of contraband, may well have affected the jury's verdict. *See Rivera v. Director, Dep't of Corrections*, 915 F.2d 280, 282 (7th Cir.1990).

The question remains whether the exclusion of Dumont's statements was of "vital interest" to Nagib's defense and was of sufficient import to deprive him of a fair trial. That question must be considered in light of, and in combination with, the alleged evidentiary error of permitting prior bad acts evidence against Nagib.

## IV. PRIOR BAD ACT EVIDENCE

■ Nagib also challenges the district court's decision to allow the government to question him on cross-examination regarding a stop of his vehicle in July, 1989, during which police found a package containing a controlled substance in his van. The district court allowed the line of questioning, over defendant's objection, stating:

> Well, insofar as the matter of the situation in July, we don't need to reach the point of whether or not Mr. Nagib was arrested, but I am going to allow Mr. Jacobs [the prosecutor] to explore the fact that Mr. Nagib had a personal experience in which his van was stopped and drugs were found. But insofar as he [sic] actually being placed under arrest or charged, I don't find that at all relevant. And the predicate for the admissibility for this evidence falls within the ambit of section Rule 404(b); and I'm allowing the admissibility of that evidence to show proof of motive, opportunity, intent, preparation, plan,

knowledge, identity or absence of mistake or accident.

> It falls within a number of those provisions in 404(b), but I will not allow counsel to go into the matter of whether or not Mr. Nagib was arrested or charged in connection with that stop.

Bad acts evidence is not admissible unless (1) it is directed toward establishing a matter in issue besides the defendant's propensity to commit the crime charged; (2) it is similar enough to be relevant; (3) it is sufficient to support a jury finding that the defendant committed the prior act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *E.g., United States v. Lennartz*, 948 F.2d 363, 366 (7th Cir.1991). Each of the above elements must be satisfied in order for prior bad act evidence to be properly admitted.

■ We review the decision to admit evidence under Rule 404(b) for an abuse of discretion. *See, e.g., United States v. Prevatte*, 16 F.3d 767, 774 (7th Cir.1994); *United States v. Koen*, 982 F.2d 1101, 1116 (7th Cir.1992). Defendant argues that the district court abused its discretion by admitting the evidence in violation of two of the *Lennartz* requirements. First, defendant argues that the prior stop evidence failed to establish anything other than defendant's alleged propensity to transport controlled substances. The government, however, responds that the prior stop evidence is relevant to defendant's knowledge of the contents of the package and defendant's motive in allowing the package to be shipped by air rather than in his van. Second, defendant argues that the unfair prejudice resulting from the introduction of this evidence outweighed any probative value.

■ It is helpful in our review of a Rule 404(b) determination for the district court to make specific findings. The district court, in admitting the evidence under Rule 404(b), simply recited the relevant exceptions to prior bad act evidence. It seems clear from the government's brief that its intent was to introduce the evidence to demonstrate knowledge or motive only. The district court indicated in its jury instructions that the jury could consider this evidence "only on the question of defendant's motive." The district

court, however, did not make the specific findings to indicate that the prior bad act was probative as to these elements, nor did the trial court weigh the circumstances to conclude whether the probative value was substantially outweighed by the prejudicial effect. *Prevatte,* 16 F.3d at 774–78 (making specific findings under each prong of the *Lennartz* test); *United States v. Connelly,* 874 F.2d 412, 415 (7th Cir.1989) (making specific finding that prior acts fit within modus operandi exception).

There was little direct evidence of Nagib's personal involvement in the packing and wrapping of the box seized with the contraband. The statements of the airline employees about Nagib's actions at the ticket counter were somewhat ambiguous. Any evidence connecting Nagib with prior transportation of drugs was, therefore, very damaging to him. *See, e.g., United States v. Betts,* 16 F.3d 748, 759 (7th Cir.1994); *United States v. Macey,* 8 F.3d 462, 466 (7th Cir. 1993).

Most of the government's proof was circumstantial and bore primarily on the actions and statements of Dumont. The evidence of the prior bad act, then, was significant if it implicated Nagib in another drug offense. Nagib refused to respond to the two questions [3] regarding the stopping of his van in which contraband was found; instead, on advice of his counsel, he relied upon invocation of the Fifth Amendment. It is also important to note that before Nagib testified, his counsel objected to any reference to the prior arrest because the matter was still pending and prejudicial. The prosecutor responded that "the government had no intention to introduce evidence of charges against Mr. Nagib in July of '89." The court stated: "Well, we're not going into that. So unless Mr. Nagib stands convicted, the fact of the arrest won't come out, but I'm not foreclosing the matter of his being involved with other drug dealing if the facts are relevant to this case." The district court, however, did

not adequately explain the basis of its ruling under Rule 404(b), nor did it discuss the danger of unfair prejudice under Rule 403. *See United States v. Beasley,* 809 F.2d 1273, 1279–80 (7th Cir.1987) (commenting that Rules 404(b) and 403 require "a principled exercise of discretion;" the district judge must identify the individual exception of Rule 404(b) and must evaluate whether the probative value of the evidence is sufficient to risk unfairly prejudicing the defendant in the eyes of the jurors).

In summation, we conclude that we must REMAND to the district court the question of prior bad act evidence for reconsideration and explanation in light of all the requirements of Rule 404(b), particularly with respect to any unfair prejudice resulting therefrom. The district court should also consider the combined effect of its actions under Rules 804(b)(3), 404(b), and Rule 403. We suggest that it may be helpful for the parties to submit further memoranda or be heard in respect to this remand.

---

**3.** The two questions posed on cross-examination were:

    1) Mr. Nagib, in July of '89 did you have a personal experience in which your van was stopped and alleged controlled substances were found in it?

    2) Mr. Nagib, in September of 1989 were you aware that a person with your name had

been stopped in July of '89 in a van registered to a person with your name and that alleged controlled substances had been found?

In response to both questions, the defendant stated, "On the advice of my attorney I plead the fifth amendment."