**Julio ABREU, Movant,**

v.

**UNITED STATES of America, Respondent.**

No. 2:95–CV–291.

United States District Court, N.D. Indiana, Hammond Division.

May 10, 1996.

Julio Abreu, pro se.

Andrew B. Baker, Jr., Asst. U.S. Atty., United States Attorneys Office, Dyer, Indiana, for respondent.

### ORDER

LOZANO, District Judge.

This matter is before the Court on the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody filed by Movant, Julio Abreu, on September 5, 1995. For the reasons set forth below, the motion is **DENIED.**

### BACKGROUND

Julio Abreu was indicted in 1989 for participating in a drug distribution conspiracy that came to be known as the "Balloon People" because the conspirators packaged drugs in balloons. The conduct alleged in the indictment stretched into 1989, and thus beyond the November 1987 effective date of the Federal Sentencing Guidelines ("Guidelines"). After the indictment issued, Abreu and the Government decided that they wanted to avoid having Abreu sentenced under the Guidelines. Accordingly, the parties proposed dismissing the indictment, replacing it with an information that charged only pre-Guidelines conduct, and having Abreu plead guilty to the information. Although reluctant at first, the Court accepted this arrangement and Abreu's plea. Abreu pled guilty to conspiracy to distribute over one kilogram of heroin and was sentenced to thirty years imprisonment under pre-Guidelines law. Abreu took an appeal with new counsel and lost. *United States v. Vasquez,* 966 F.2d 254 (7th Cir.1992).

Several months ago, Abreu filed a section 2255 motion in this Court. In broad terms, he argues that his sentence was illegal, that his guilty plea was involuntary, and that his trial counsel provided ineffective assistance.

### DISCUSSION

■ Abreu argues that he received an "illegal sentence" because he was sentenced under pre-Guidelines law when his criminal conduct occurred after the Guidelines took effect. The Government argues procedural default in that Abreu failed to raise the illegal sentence argument on appeal and therefore cannot raise it in his section 2255 motion. The Government, who bears the burden of raising procedural default,[1] does not attack any of Abreu's other arguments on that ground.

■ "A section 2255 motion is 'neither a recapitulation of nor a substitute for a direct appeal.'" *McCleese v. United States,* 75 F.3d 1174, 1177 (7th Cir.1996) (quoting *Belford v. United States,* 975 F.2d 310, 313 (7th Cir.1992), *overruled on other grounds, Castellanos v. United States,* 26 F.3d 717 (7th Cir.1994)). Indeed, the primary forum for correcting error is the appeal. *Cabello v. United States,* 884 F.Supp. 298, 301 (N.D.Ind.1995).

■ As such, a defendant cannot use a section 2255 motion to raise issues previously raised on appeal, absent "changed circumstances." *Belford,* 975 F.2d at 313. Issues that the defendant could have raised on appeal but did not fall into two categories. *See id.* First, under no circumstances can a section 2255 motion raise a nonconstitutional issue not raised on appeal. As for constitutional issues not raised on appeal, a section 2255 motion may raise them only if the defendant shows either (1) cause for and prejudice from failing to raise the issue, or (2) that the court's refusing to address the issue would be a fundamental miscarriage of justice. *McCleese,* 75 F.3d at 1177; *Cabello,* 884

---

1. *See Nichols v. United States,* 75 F.3d 1137, 1145 n. 17 (7th Cir.1996); 2 James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 41.4a, p. 1197 n. 5 (2d ed.1994); *see also McCleskey v. Zant,* 499 U.S. 467, 477, 490, 493–94, 111 S.Ct. 1454, 1461, 1468, 1469–70, 113 L.Ed.2d 517 (1991) (noting (1) that the state has the burden of raising abuse-of-the-writ against a state prisoner's successive habeas petition, and (2) that the same cause-and-prejudice standard that governs state procedural default

should govern what constitutes excusable neglect for abuse-of-the-writ issues). In light of this authority, the Court has not independently considered procedural default arguments the Government did not specifically make. Of course, the Government may have assumed that Abreu can get around the procedural default hurdle. *See* Liebman, *supra,* § 41.4a, pp. 1197–98 (noting that certain claims cannot be raised on direct appeal as a practical matter and therefore can be first raised in a section 2255 motion).

F.Supp. at 301. The defendant who fails to take an appeal at all is deemed to have failed to raise any and all issues on appeal. *Belford*, 975 F.2d at 313 n. 2.

■ If for no other reason, the Government wins its procedural default argument by default. Abreu did not preemptively address procedural default in his motion, and his deadline for filing a reply to the Government's response has passed without him filing any reply. Given these circumstances, the Court must deem Abreu's illegal sentence argument procedurally defaulted.

■ In any event, Abreu's illegal sentence argument is flawed on the merits,[2] as are the rest of his arguments. At the outset, the Court notes that Abreu's arguments of illegal sentence and invalid plea rest largely on two flawed factual assertions. First, Abreu asserts that he was not involved in the Balloon People conspiracy during the time period alleged in the information and assumed during his plea hearing.[3] Second, Abreu claims that his trial counsel coerced him into pleading guilty to participating during the alleged time period; Abreu says counsel told him that if he did not go along with that version of the facts, he would receive a less favorable sentence. Both these factual assertions by Abreu are contradicted by the record of the plea and sentencing hearings.

Abreu seems to think that he would have received a lighter sentence had he been sentenced under the Guidelines; as such, he argues that his involvement with the Balloon People conspiracy all occurred after the Guidelines' effective date of November 1987. Specifically, Abreu argues that he only became involved with the Balloon People in March 1988, after he ran up a debt to a co-conspirator. He says he left the conspiracy in November 1988.

Yet under oath at his plea hearing, Abreu gave a different story. He pled guilty to an information that charged him with participating in a conspiracy that ended in October 1987. He stated that from October 1986 until April 1987, he helped a co-conspirator, Damasco Vasquez, by delivering heroin and collecting money. (P. Tr. 30)

Abreu offers several reasons why his sworn testimony at the plea hearing should be disregarded. First, he claims that during the hearing, the Court itself expressed doubt as to whether a factual basis for the plea existed. True, the Court did call a recess to clear up facts. But what concerned the Court were Abreu's odd statements that he had "helped" Vasquez by stealing his customers and that he had trafficked in cocaine when the information only mentioned heroin. (P. Tr. 27–29) The Court did not express concern over the time period that Abreu participated in the conspiracy. *See id.*

Abreu also contends that at one point during the plea hearing, he did start to "tell the truth" about when he participated in the conspiracy. Granted, in the midst of professing memory loss, Abreu did offer the vague assertion that he participated during the "last part" of 1987. (P. Tr. 27) Shortly after Abreu said this, the Court took its recess, after which defense counsel told the Court that Abreu had been nervous about testifying. (P. Tr. 29) Abreu then clearly told the Court that he had helped Vasquez distribute heroin from October 1986 until April 1987. (P. Tr. 30–31)

Abreu also cites testimony an agent gave at his sentencing hearing. The agent testified that he did not "believe" that Abreu participated in the conspiracy in 1987 or before. (S. Tr. 71–72) Yet the Government maintained that it called the agent to establish, for sentencing purposes, that Abreu was a major player in the conspiracy who dealt drugs to get rich rather than to support his children or a personal drug habit. (S. Tr. 76–79) Indeed, the Government indicated

2. Since the Government has not argued otherwise, the Court presumes for the alternative analysis of the merits of the illegal sentence argument that it asserts the type of error cognizable under section 2255, i.e., an error that is "jurisdictional, constitutional," or "inherently results in a complete miscarriage of justice." *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir.1994).

3. The Court notes that Abreu does not argue that his conduct straddled the Guidelines' effective date, i.e., that it began before and ended after the effective date. Rather, Abreu insists that all his criminal conduct occurred after the effective date.

that it had ample other evidence that Abreu was involved in the conspiracy during 1987. (S. Tr. 77) In sum, the agent's role was not to specifically testify on when Abreu was in the conspiracy, and the agent did not specifically testify on that issue. *See id.*

Abreu's clear and specific plea hearing testimony that he was in the conspiracy from October 1986 until April 1987 is entitled to a presumption of truth. *Barker v. United States,* 7 F.3d 629, 634 n. 5 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 939, 127 L.Ed.2d 229 (1994); *United States v. Ellison,* 835 F.2d 687, 693 (7th Cir.1987). The Court will not override that presumption based on what Abreu has presented here, and as such rejects Abreu's argument that he was in the conspiracy only after the Guidelines' effective date.

As his second flawed factual assertion, Abreu says that his lawyer coerced him into pleading guilty with false promises and threats. Specifically, Abreu says that before he signed his plea agreement, defense counsel told him that he had agreed with the Government that Abreu would get no more than five years under pre-Guidelines law. Abreu says that when defense counsel showed him the plea agreement, he told counsel that it did not truly state the facts of his case. According to Abreu, counsel replied that Abreu must sign the plea agreement or otherwise face a life sentence.

As noted above, Abreu now contends that at the plea hearing he began to tell the Court the true facts of his case before the recess. According to Abreu, at the recess defense counsel told Abreu he was "messing up" and must go along with the story that counsel and the AUSA had concocted. Abreu says counsel then talked at length with the AUSA, after which counsel told Abreu what his story must be for the Court. Once back in court, Abreu now says, he told the Court what he had been instructed to, namely, that he was involved in the Balloon People conspiracy during 1986–87.

In sum, then, Abreu argues that his lawyer gave him two choices: (1) tell the Court the concocted story and get a five-year sentence, or (2) tell the Court another story and get life.

However, Abreu swore at the plea hearing that his lawyer had not pressured him into pleading guilty to ensure or avoid any given sentence. Abreu acknowledged at the hearing that under the terms of his plea agreement, he could receive a sentence ranging from probation to life. (P. Tr. 17–19, 24–25) He acknowledged that both the Government and defense counsel might recommend a sentence to the Court, but that the Court could reject such recommendations. (P. Tr. 21–22) He told the Court that no one had forced him to plead guilty nor induced his plea with promises or assurances other than those in the plea agreement. (P. Tr. 22–23) He said that no one had predicted or promised what his precise sentence would be. (P. Tr. 25)

The Court recognizes that Abreu said all these things before the recess, at which time, according to Abreu, defense counsel chided him for "messing up." So, Abreu might now say that counsel pressured him only *after* he told the Court that counsel had not done so. However, the Court notes again that Abreu now says it was *before* the plea hearing that defense counsel first pressured Abreu to sign what he now maintains was a plea agreement that misstated the facts of his case. Again, Abreu swore at the plea hearing that no such prehearing pressure occurred.

All told, the Court concludes that Abreu has now found the recess at the hearing to be a convenient tool for attempting to get around his hearing testimony. That tool is too convenient to be taken seriously.

Abreu's sworn testimony at the plea hearing contradicts his present argument that his lawyer pressured him to lie to get five years and avoid life. Again, Abreu's testimony is entitled to a presumption of truth. *Barker,* 7 F.3d at 634 n. 5; *Ellison,* 835 F.2d at 693. The Court will not override the presumption, and as such rejects Abreu's argument that he was coerced into pleading guilty.

■ The above analysis eviscerates Abreu's arguments that he was illegally sentenced under pre-Guidelines law, that his lawyer gave ineffective assistance by coercing his plea, and that his plea was involuntary. The factual scenario that Abreu offers

to support these arguments is simply contradicted by the record.

■■■ The remainder of Abreu's arguments fall under the rubric of ineffective assistance of counsel. The arguments are therefore governed by the test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* established a two-prong test. First, the defendant must show that counsel's performance fell below the standard of the Sixth Amendment. 466 U.S. at 687, 104 S.Ct. at 2064. Specifically, the defendant must show that counsel's performance " 'fell below an objective standard of reasonableness' and 'outside the wide range of professionally competent assistance.' " *Barker*, 7 F.3d at 633 (quoting *Strickland*, 466 U.S. at 688, 690, 104 S.Ct. at 2065, 2066). When considering the performance prong, a court's "scrutiny of counsel's performance must be highly deferential," the court "must indulge a strong presumption that counsel's conduct" was constitutionally adequate, and the court must keep in mind "the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Under the second prong, prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. A court can resolve an ineffective assistance claim by deciding either *Strickland* prong against the defendant, and the court need not consider performance before considering prejudice. *Barker*, 7 F.3d at 633.

Abreu insists that his trial counsel was ineffective in several ways. These are addressed individually below.

■■■ Abreu seems to argue that his lawyer gave ineffective assistance by not pursuing sentencing "alternatives." (Mot. p. 11) The alternative Abreu said his lawyer by-passed was arranging to have Abreu sentenced under the Guidelines. Yet, as already covered, Abreu's sworn testimony that all his conduct was pre-Guidelines rules out any such sentencing alternative. Abreu's lawyer could not have been ineffective by failing to pursue an alternative that did not exist.

■■■ Still, the Court surmises that with the term "alternative," Abreu means to suggest that his lawyer could have negotiated a plea under either pre- or post-Guidelines law. Even assuming the lawyer had that option, the Court would not deem his performance constitutionally ineffective.

Abreu's rather unclear brief suggests several ways in which he may believe his lawyer violated *Strickland* by not pursuing "alternatives." First, Abreu suggests that he would have been better off if his lawyer had negotiated a plea agreement that had him sentenced under the Guidelines. Yet Abreu has not attempted to show the Court why such a plea would have been substantially better for him. Since Abreu himself has not tried to show prejudice, the Court has a limited duty, if any, to cover that point for him.

In any event, Abreu's pre- and post-Guidelines sentencing "alternatives" do not seem much different. Under pre-Guidelines law, the conspiracy to distribute over one kilogram of heroin alleged in the information subjected Abreu to no mandatory minimum prison sentence, a maximum sentence of life, and a chance for parole after ten years for any sentence of thirty years or over. Under the Guidelines and assuming as Abreu has that his chargeable conduct spanned only March–November 1988, the one-kilogram conspiracy would have subjected Abreu to the same sentence range with no chance for parole. Under the Guidelines, a one-kilogram conspiracy that, as charged in the original indictment, stretched into 1989 would have subjected Abreu to a mandatory minimum sentence of ten years and a maximum of life with no chance for parole.[4]

---

4. These sentencing scenarios are collectively established by the following authorities: (1) *United States v. Duprey*, 895 F.2d 303, 311 (7th Cir. 1989), *cert. denied*, 495 U.S. 906, 110 S.Ct. 1927, 109 L.Ed.2d 291 (1990); *United States v. Meyers*, 847 F.2d 1408, 1414–15 (9th Cir.1988) (covering applicable maximum sentences); (2) *United States v. McNeese*, 901 F.2d 585, 602 (7th Cir. 1990); *United States v. Young*, 975 F.2d 1537, 1539–40 (11th Cir.1992), *cert. denied*, 507 U.S.

Abreu apparently faced a similarly wide range of risk under each of these three scenarios. Consequently, Abreu's lawyer had no constitutional duty to pursue any scenario over another.

Adding a twist to the foregoing, Abreu's second argument is that counsel never told him that he had an "alternative" of pleading guilty under the Guidelines. The Court recognizes that defense lawyers have a duty to explain to clients the strategic choices available and their potential ramifications. If Abreu truly had the alternative of pleading under either pre- or post-Guidelines law and his lawyer did not tell him so, the lawyer perhaps could have thereby delivered less-than-optimal representation. However, the Court does not believe that the lawyer's efforts would have thereby fallen below the norms of the Sixth Amendment, because under either sentencing scheme Abreu faced similar possible penalties. The Constitution does not require a lawyer to explore every possible strategic choice with a defendant no matter how substantially similar they may be.

Perhaps Abreu perceives the difficulty in trying to satisfy *Strickland* by showing that his lawyer failed to pursue or inform him of the "alternative" of a plea under the Guidelines. That perception may have prompted Abreu's strained third apparent argument: Abreu maintains that if his lawyer had told him that he had the "alternative" of Guidelines sentencing, he would have insisted on going to trial instead of pleading guilty.

■ What may have inspired Abreu to argue this is the general rule governing a defendant who seeks to invalidate a plea on the ground that his lawyer gave ineffective assistance by inaccurately predicting the sentence the plea would bring. Such a defendant must show that had he known the lawyer's prediction was mistaken, he would have

gone to trial instead of pleading guilty. *Hill v. Lockhart,* 474 U.S. 52, 59–60, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985); *Barker,* 7 F.3d at 633. This rule seems to have been tailored for the case where a lawyer predicts a certain sentence, and the defendant ends up getting a worse one.[5] Abreu's argument presents a somewhat different angle. Abreu seems to stress that his lawyer's mistake was representing that pleading guilty under pre-Guidelines law gave Abreu the best chance at minimizing his sentence, when the Guidelines were actually more favorable. Abreu seems to argue that if his lawyer told him about the "alternative" of Guidelines sentencing, he would have gone to trial instead of pleading guilty. Yet Abreu has not explained what about that alternative would have motivated him to go to trial. The Court has considered the question and simply fails to see why Abreu's knowing about a second sentencing "alternative" that was substantially the same as or even better than the one he pled under would have caused him to go to trial.

Ultimately, the Court believes that Abreu's argument represents an awkward attempt to satisfy *Strickland* and simultaneously conceal what he is truly after: another chance to roll the sentencing dice and see if he comes up with a shorter sentence under the Guidelines. Abreu seems to believe that he had a chance to do better under the Guidelines, and that his lawyer unconstitutionally denied him that chance. Yet counsel's duty under the Constitution was to negotiate a reasonably favorable plea agreement, not the best one possible. Any vague chance that Abreu might have done better under the Guidelines does not mean that his lawyer gave ineffective assistance.

■ Next, Abreu argues that counsel should have challenged inaccurate information in his presentence report ("PSR"). As Abreu notes, at the sentencing hearing the

---

978, 113 S.Ct. 1431, 122 L.Ed.2d 798 (1993) (citing *United States v. Rush,* 874 F.2d 1513 (11th Cir.1989)) (covering applicable minimums); (3) *Vasquez,* 966 F.2d at 259 n. 2 (covering availability of parole); (4) *United States v. Bafia,* 949 F.2d 1465, 1478 (7th Cir.1991), *cert. denied,* 504 U.S. 928, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992) (addressing conspiracies that "straddle" the effective date of the Guidelines).

5. Here, the Court has already rejected Abreu's factual contention that counsel told him he had negotiated a guaranteed five-year sentence with the Government. Thus, Abreu cannot get to first base on any argument to invalidate his plea based on his lawyer having inaccurately predicted a specific sentence.

Government presented a New Jersey state criminal charge against Abreu. Apparently, the charge (1) was lodged after Abreu left the Balloon People conspiracy and moved to New Jersey, and (2) was later dropped. Abreu complains that his lawyer's only attempt to exclude the charge from the Court's consideration was a weak relevancy objection at the sentencing hearing that counsel could not back up with case law. Yet Abreu has not demonstrated that counsel's performance thereby fell below Sixth Amendment standards. Abreu has not offered any authority that his lawyer should have or could have relied on to keep the state charge out. Indeed, both before and after the Guidelines, courts have generally been allowed to consider even uncharged ancillary criminal conduct in choosing a sentence. Given this, any greater effort by counsel to exclude the state charge might well have been futile. Moreover, merely by lodging some objection, even if not the strongest one possible, counsel likely fulfilled any Sixth Amendment duty he had to object.

In addition, Abreu has not made any effort to show prejudice. He has not argued that he would have received a lighter sentence if the Court had excluded the state charge. Even though Abreu is pro se, the Court will not make that potentially complicated argument for him.

■ Abreu next argues that counsel should have established that the Government had tagged Abreu with the wrong alias. Throughout the proceedings, the Government maintained that Abreu went by the nickname "Blackie." Abreu now says that he was not Blackie. Yet even assuming he was not Blackie, Abreu does not attempt to show what difference that made to his case. As before, the Court will not flesh out this inchoate argument on Abreu's behalf.

■ Abreu also argues that counsel generally should have tried to paint him as more favorable to get a lighter sentence. Abreu says counsel should have shown the Court that he was a low-level player in the conspiracy. Yet counsel did attempt to do precisely that at the sentencing hearing. (S. Tr. pp. 50–52, 72) That counsel perhaps failed does not render his effort subpar under the Sixth Amendment.

Abreu also tosses off the notion that counsel should have argued that the amount of drugs attributed to Abreu was not foreseeable to him. As before, the Court will not flesh out this terse argument for Abreu.

Abreu says that counsel should have capitalized on Abreu's being a drug addict, since at sentencing the Court "flailed" Abreu for being in the drug business for the sole purpose of getting rich. The Seventh Circuit ruled on Abreu's closely related if not identical argument that this Court did not consider his status as a drug user in sentencing him. *Vasquez*, 966 F.2d at 260. Abreu cannot raise in a section 2255 motion arguments that were decided on appeal. *Belford*, 975 F.2d at 313.

■ Even if this argument is not thus barred, Abreu has not tried at all to show how he would have received a better sentence if counsel had somehow convinced the Court that the $25–a–day drug habit detailed in the PSR amounted to a serious addiction that drove Abreu to crime. Also, as noted, counsel did try to paint Abreu as a low-level conspirator who was only trying to provide for his family. (S. Tr. 50–52) Counsel could have deliberately and competently made the strategic choice of not advancing the addiction ground as an addition to or substitute for the ground of family need. At some point, counsel had to choose his mitigation theory and go with it for better or worse. Counsel's conduct did not violate the Sixth Amendment.

Finally, Abreu argues that counsel should have better capitalized on the agent's testimony that seemed to limit Abreu to only 1988 participation in the conspiracy. What perhaps has escaped Abreu is that his counsel elicited that very testimony in the first place. (S. Tr. 70–71) Still, Abreu seems to suggest that his counsel should have employed the testimony more forcefully. But the true nature and context of the testimony have already been revealed above, and the testimony came after the plea negotiations, Abreu's plea hearing testimony, and the Court's acceptance of the plea to the information charging Abreu with criminal conduct ending in October 1987. (S. Tr. pp. 45–47) Thus, by the time the agent testified, any issue over whether Abreu's conduct was pre-

or post-Guidelines was settled, so counsel had no Sixth Amendment duty to revisit that issue.

Here and there, the pro se Abreu perhaps takes a few stabs at raising other arguments. This Court has liberally construed Abreu's motion and concludes that any other arguments are simply too underdeveloped to warrant being addressed.

In closing, the Court adds some observations that bear on the totality of Abreu's present motion. Abreu's plea agreement grew out of active and creative bargaining by his counsel and the Government. *See Vasquez,* 966 F.2d at 256–57; *United States v. Abreu,* 747 F.Supp. 493, 497–500 (N.D.Ind. 1990) (*aff'd* by *Vasquez*). The agreement deliberately avoided what counsel for several defendants appear to have believed would have been harsher sentencing under the Guidelines. *See id.* Given these and other variables, even if Abreu's counsel had some factual basis for negotiating the plea agreement that Abreu says he should have had or for arguing sentencing factors differently, counsel could have competently chosen the route he did.

*CONCLUSION*

For the foregoing reasons, the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody is **DENIED.**