James Joseph **SACERICH**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

No. 2:96–CV–93–RL.

United States District Court,
N.D. Indiana,
Hammond Division.

March 27, 1997.

---

David L. Chidester, Valparaiso, for plaintiff.

Andrew B. Baker, Jr., Assistant U.S. Attorney, Dyer, for Defendant.

## ORDER

LOZANO, District Judge.

This matter is before the Court on the Brief and Memorandum of Law in Support of Habeas Corpus Petition, filed by Petitioner, James Joseph Sacerich, on September 23, 1996. For the reasons set forth below, this brief and the section 2255 motion it represents are **DENIED**, and the Clerk is **ORDERED** to enter judgment dismissing this case with prejudice.[1]

### BACKGROUND

Movant, James Joseph Sacerich, was named in a multi-count, multi-defendant indictment. Sacerich was charged with a narcotics conspiracy and two tax violations. On the second day of his trial, Sacerich pled guilty to the narcotics conspiracy count and one of the tax counts. The other tax count was dismissed upon the Government's motion. Several months later, Sacerich was sentenced. However, when it came time for Sacerich to begin serving his sentence, he did not appear. He was apprehended roughly four years later, and is now serving his sentence. Sacerich never took an appeal. Now before the Court is Sacerich's motion under 28 U.S.C. section 2255.

### DISCUSSION

The history of Sacerich's motion will influence how the Court treats it. Sacerich first filed his motion pro se, attaching a personal affidavit he called a "certification." Later, an attorney filed an appearance for Sacerich in this section 2255 proceeding. The Court then gave Sacerich and the attorney a choice: (1) proceed on the pro se materials, with the Court not giving them the generous construction usually afforded pro se litigants; or (2) have the attorney redraft and resubmit the materials. (Order of 6/3/96) Sacerich chose the latter, with his counsel filing a new brief accompanied by the same affidavit, plus some other exhibits. In these circumstances, the Court will only consider factual asser-

---

1. Sacerich filed a pro se motion, then counsel filed an appearance and moved to strike the motion, and the magistrate judge granted the motion to strike. In place of the pro se motion, Sacerich's counsel filed the above-referenced brief. Technically speaking, counsel did not re-file the pro se motion itself. Under these circumstances, the Court treats the above-referenced brief as supporting and implicitly reasserting the previously stricken motion.

tions and legal arguments that come from proper sources. .

■ As is typical, Sacerich's motion relies in large part on things he says happened during his case but that are not reflected in the record. Referring to off-the-record evidence is routine in section 2255 motions, and of itself does not concern the Court. However, some of the off-the-record facts asserted here are not described in Sacerich's own affidavit, but only in the brief his lawyer prepared. The Court will consider only the affidavit as a source of off-the-record facts, not the brief. Although Sacerich is entitled to a full and fair ruling, the Court does not believe it is obligated to allow unsworn allegations in a brief to govern the scope of a post-conviction proceeding, particularly where the movant is represented by counsel.

■ Likewise, the Court will take legal arguments only from a proper source. To some extent, Sacerich's affidavit may offer legal theories not echoed in his lawyer's brief. Yet the Court will not entertain legal theories contained in the affidavit of a movant represented by counsel. By offering Sacerich the opportunity to have counsel rewrite his brief, the Court did not mean to put itself in the position of having to comb through both a lawyer's brief and a pro se affidavit to unearth legal theories. The Court will presume that counsel disregarded as unfounded any legal theories mentioned in the affidavit that do not get similar mention in the brief.

Turning to the merits, the thrust of Sacerich's motion is that his trial counsel delivered ineffective assistance in several ways. The governing test is set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* test has two prongs. First, the defendant must show that counsel's performance fell below the performance standard of the Sixth Amendment. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Specifically, the defendant must show that counsel's performance " 'fell below an objective standard of reasonableness' and 'outside the wide range of professionally competent assistance.' " *Barker v. United States,* 7 F.3d 629, 633 (7th Cir.1993) (quoting *Strickland,* 466 U.S. at 688, 104

S.Ct. at 2064–65). Under the second prong, prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

■ Sacerich first argues that his counsel was ineffective because he failed to file an appeal. This argument fails because Sacerich has not even alleged that he asked his counsel to take an appeal.

■ Criminal defendants have a Sixth Amendment right to effective assistance of counsel on appeal. *See Castellanos v. United States,* 26 F.3d 717, 718 (7th Cir.1994). Integral to this right is the principle that if the defendant asks the lawyer to appeal, the lawyer must do so. *Id.* If the lawyer refuses or neglects to file an appeal after the defendant requests one, a per se Sixth Amendment violation occurs, the remedy for which is reinstating the defendant's appeal rights. *Id.* at 719–20; *United States v. Nagib,* 56 F.3d 798, 801 (7th Cir.1995).

■ " 'Request' is an important ingredient in this formula. A lawyer need not appeal unless the client wants to pursue that avenue." *Castellanos,* 26 F.3d at 719. If the defendant never asks the lawyer to appeal, the defendant's Sixth Amendment rights cannot be violated. *Id.*

Sacerich's present counsel seems to assert that Sacerich asked his trial counsel to take an appeal, and trial counsel failed to do so. But in his own affidavit, Sacerich merely asserts that he did not know he had a right to appeal; nowhere does the affidavit suggest that Sacerich asked his counsel to appeal. Despite Sacerich's professing ignorance of his appeal rights, the transcripts of his plea and sentencing hearings plainly reveal that the Court advised him that he had a right to appeal his sentence. (Plea Tr. 3); (Sent. Tr. 35) Because Sacerich's failure-to-appeal argument hinges on the notion that he did not know he could appeal, the argument fails.

The Court is mindful that the Government itself has stated that an evidentiary hearing is needed to resolve this point. The Court does not concur, however, because even taking Sacerich's affidavit as true does not establish ineffective assistance. (Perhaps the Government, like Sacerich's present counsel, read the affidavit more broadly than the Court has.)

■ Next, Sacerich asserts that his counsel delivered ineffective assistance by failing to advise him that he faced a mandatory minimum sentence of ten years on the narcotics conspiracy count. During Sacerich's plea hearing, the AUSA told him that he faced no mandatory minimum. Sacerich's Presentence Report ("PSR") also indicated that he did not face any mandatory minimum. Sacerich now says the AUSA and PSR were wrong, that he faced a minimum of ten years, and that his counsel should have told him so.

Sacerich's present counsel never addresses the evolving sentencing law that existed when Sacerich was committing and being sentenced for the conspiracy. Sacerich pled guilty to a count that charged him with participating in a narcotics conspiracy that ended in August 1988. The mandatory minimum Sacerich says applied to him actually did not take effect until November 1988. *United States v. Robinson*, 883 F.2d 940 (11th Cir.1989); *see United States v. Montoya*, 891 F.2d 1273, 1293 (7th Cir.1989). Because the conspiracy ended before the effective date of the mandatory minimum, Sacerich was not subject to the minimum. Therefore, Sacerich's counsel could not have been ineffective in failing to advise him of the minimum.

■ Next, Sacerich says his counsel dropped the ball at sentencing by failing to offer a meaningful challenge to the amount of cocaine the PSR attributed to him. Neither in his brief nor in his affidavit does Sacerich offer any factual basis for concluding that he was responsible for less cocaine than he was sentenced for. As his only support, Sacerich points to a portion of his sentencing hearing where it might appear that his counsel elected not to press an argument for a lesser amount of cocaine. To show that passing on the argument was ineffective assistance, Sacerich must show that the argument was worth pressing, i.e., that it had a factual basis and would have made a difference in Sacerich's sentence if won. Sacerich does not even attempt this showing.

In a similarly unsupported fashion, Sacerich asserts that his counsel should have cut a better plea deal. Sacerich lists several alternatives that he says were available, but he does not offer any facts or details showing that they truly were available.

■ First, Sacerich now asserts that his counsel could have arranged a plea that would have had him sentenced under pre-Guidelines law. This argument is weak in several respects.

■ Sacerich pled guilty to an indictment that charged him with participating in a conspiracy that began in 1984 and ended in August 1988, i.e., nine months or more after the Sentencing Guidelines' effective date of November 1, 1987. *See United States v. Meyers*, 847 F.2d 1408, 1414–15 (9th Cir. 1988) (noting the effective date) A conspiracy that began before the effective date and ended afterward is covered by the Guidelines. *United States v. Bafia*, 949 F.2d 1465, 1477 (7th Cir.1991). Sacerich offers no evidence that the conspiracy he belonged to ended before November 1987. The sentencing transcript reveals that the Court has already considered and rejected the proposition that Sacerich ever withdrew from the conspiracy before the Guidelines' effective date. (Sent. Tr. 4) Sacerich does not now offer any evidence to undermine that conclusion. Finally, Sacerich has not shown that he actually would have received a better sentence under pre-Guidelines law, which is no foregone conclusion. *See Abreu v. United States*, 925 F.Supp. 1404, 1410–11 (N.D.Ind.1996) (concluding that a defendant who had argued the reverse of Sacerich, i.e., that he would have been better off under the Guidelines, had not sufficiently shown that the Guidelines truly offered a better alternative). Perhaps Sacerich's belief that he would have done better is grounded in the notion, discredited above, that he faced a mandatory minimum of ten years under the Guidelines.

To show his counsel was ineffective in foregoing a non-Guidelines deal, Sacerich must show at a minimum that counsel had a factual basis for pursuing such a deal, and that such a deal would have given him a better sentence. Sacerich has shown neither.

 Similarly, Sacerich tersely suggests that his counsel could have arranged a plea to only the tax counts of the indictment and not the narcotics conspiracy count, or to mere possession instead of conspiracy. Sacerich does not explain how counsel could have pulled these deals off.

Overall, Sacerich's counsel had little bargaining power, because Sacerich decided to plead during the middle of trial. At that point, the Government had little incentive to give concessions. Even more, Sacerich had no absolute ability to enter a formal plea agreement at that late stage. Before this Court became involved, Judge Moody ordered that all plea agreements be filed by January 9, 1989, i.e., seven days before Sacerich's trial began. (Order of 10/25/88) Also, this Court has a longstanding practice of accepting plea agreements no later than five calendar days before trial. Indeed, the AUSA noted at Sacerich's plea hearing that both he and defense counsel understood that whether to accept any plea "at this late point" was "solely within [the Court's] discretion." (Plea Tr. 3)

 Sacerich's next argument is that his counsel rendered ineffective assistance by not obtaining a section 5K1.1 Guidelines departure for substantial assistance. In essence, Sacerich suggests that he gave the Government substantial assistance, but his counsel did not obtain for him the departure that the assistance supported. This argument is weak in several respects.

 First, Sacerich's counsel did not control the 5K1.1 decision. The Government decides whether to move for a 5K1.1 departure. *See Wade v. United States,* 504 U.S. 181, 185, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992); *United States v. Bagnoli,* 7 F.3d 90, 91–92 (6th Cir.1993); U.S.S.G. § 5K1.1. Except in extreme circumstances not present here, Sacerich's counsel could not have forced the Government to file the mo-

tion. *Wade,* 504 U.S. at 185–86, 112 S.Ct. at 1843–44. The record of the sentencing hearing suggests that the Government was aware of Sacerich's cooperation, considered filing a 5K1.1 motion based on it, but ultimately decided not to do so. (Sent. Tr. 21–27) Any failure of Sacerich's counsel to persuade the Government to exercise its discretion to file the motion must be attributed to bad luck rather than constitutionally defective representation.

Undaunted, Sacerich contends that the Government promised him a 5K1.1 motion, and his counsel was ineffective by failing to "obtain specific performance" of the promise. The record belies the existence of any such promise. When Sacerich pled guilty, the AUSA and defense counsel stated in Sacerich's presence that the only "agreement" struck was that Sacerich would try to cooperate and the Government might later move for a departure if the cooperation warranted it. (Plea Tr. 2–3) The Government "promised" Sacerich nothing. *See id.* Sacerich himself swore no one had promised him anything to induce his plea. (Plea Tr. 9) No written plea agreement was filed. The only concrete benefit Sacerich appears to have gained from pleading guilty was that the Government dismissed one of the tax counts against him. (Plea Tr. 32)

Against this backdrop, Sacerich still insists that he was promised a benefit for his cooperation. Specifically, he claims that after he pled guilty, FBI Agent Dunn promised he would receive only probation in exchange for his assistance. The Government has produced an affidavit from Agent Dunn in which he denies making that promise. Here again, the Government states that an evidentiary hearing is necessary to resolve this point. The Court concludes otherwise, because even if Agent Dunn made the promise, Sacerich's counsel did not deliver ineffective assistance.

Sacerich says that his counsel should have "obtained specific performance" of Agent Dunn's alleged promise—in other words, counsel should have forced the Government to follow through on the promise. Yet even if Agent Dunn made the promise, the Government did not have the power to deliver on it. According to Sacerich's affidavit—the ex-

clusive source of off-the-record facts—Agent Dunn's precise promise was that Sacerich would receive probation. Only the Court could ultimately decide whether Sacerich would get probation. As such, nothing Sacerich's counsel could have done could have forced the Government to "specifically perform" Agent Dunn's alleged promise. Counsel could not have been ineffective by failing to hold the Government to a promise it simply could not keep.

Sacerich's affidavit does not say that Agent Dunn promised him the Government would file a 5K1.1 motion. If Agent Dunn had promised the motion, perhaps Sacerich's counsel could have attempted to enforce that promise. Yet even then, the Government's mere filing of the motion would not guarantee that the Court would grant it. *See U.S.S.G. 5K1.1* (noting that the Court *"may* depart from the guidelines" based on a 5K1.1 motion from the Government) (emphasis added). In any event, as already covered, Sacerich has not alleged that Agent Dunn promised a motion.

■ Sacerich may also be arguing that he pled guilty because his counsel rendered ineffective assistance by promising he would receive a 5K1.1 departure. Yet during his plea hearing, Sacerich heard his counsel, the AUSA, and the Court discuss that although the Government might consider moving for departure based on any later assistance, it made no promises. (Plea Tr. 2–3) Later, Sacerich swore that he understood his sentence could range from no imprisonment to life imprisonment. (Plea Tr. 12) He also swore that no one had predicted or promised a precise sentence. (Plea Tr. 9, 14) The hearing demonstrates that Sacerich's counsel did not promise him a departure.

■ Sacerich's final argument is that he was subjected to double jeopardy through an asset forfeiture. Actually, Sacerich's counsel seems to concede that he has no factual basis for the argument. He also seems to concede that recent double jeopardy cases are against him. Still, he asks for an evidentiary hearing to develop the double jeopardy claim. The Court refuses this request.

■ Counsel is not seeking an evidentiary hearing in the true sense. What counsel effectively asks for is a hearing in which he will conduct discovery. The purpose of an evidentiary hearing is to resolve conflicts in evidence, not to conduct discovery to determine whether any evidence exists. Although section 2255 movants can sometimes obtain discovery, counsel has not specifically invoked the proper procedures for doing so. See Rule 6 of the Rules Governing Section 2255 Proceedings.

Overall, Sacerich has presented an incomplete and unpromising double jeopardy argument, which the Court must reject.

*CONCLUSION*

For the foregoing reasons, the Brief and Memorandum of Law in Support of Habeas Corpus Petition and the section 2255 motion it represents are **DENIED**, and the Clerk is **ORDERED** to enter judgment dismissing this case with prejudice.