**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Juan GARCIA, Defendant–Appellant.**

**No. 91–3094.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1992.

Decided Feb. 24, 1993.

David E. Risley, Colin S. Bruce, Asst. U.S. Atty. (argued), Springfield, IL, for plaintiff-appellee.

D. Peter Wise (argued), Metnick, Barewin, Wise & Cherry, Springfield, IL, for defendant-appellant.

Before RIPPLE and KANNE, Circuit Judges, and WILLIAMS, District Judge.*

KANNE, Circuit Judge.

Juan Garcia and Wilfredo Torres were arrested when police discovered two hundred and sixty pounds of marijuana in their truck's cab. Mr. Torres gave a full confession and told police that Mr. Garcia was ignorant of the marijuana's presence in the truck and Mr. Torres' plan to distribute it. Mr. Garcia also maintained his innocence. At trial, the district court excluded Mr. Torres' statements which exculpated Mr. Garcia, concluding that the requirements of FED.R.EVID. 804(b)(3) were not satisfied. We find that the rule's requirements were met and reverse Mr. Garcia's conviction.

I.

On January 24, 1991, Illinois State Trooper Jeff Gaither stopped a semi-truck headed north on I–55 near Bloomington, Illinois. Trooper Gaither stopped the tractor-trailer for a violation of the Motor Carrier Safety

---

\* The Honorable Ann Claire Williams, District Judge for the Northern District of Illinois, is sitting by designation.

Code. Once stopped, Juan Garcia, the driver, got out of the truck to meet the officer. Trooper Gaither requested Mr. Garcia's driver's license as well as his logbook and bills of lading. Mr. Garcia produced a license but did not have a logbook or bills of lading. After Mr. Garcia told Trooper Gaither that he had a co-driver, he was instructed to return to the cab of the truck. When Mr. Garcia opened the door to get back in the truck, Trooper Gaither noticed a heavy scent of air freshener coming from the cab. At that time, the officer asked Wilfredo Torres, the co-driver, for his license and logbook; Mr. Torres produced both items. Trooper Gaither then directed Mr. Garcia out of the truck and into his squad car, informing Mr. Garcia that he was going to perform a motor carrier safety inspection. He asked for consent to search the truck's cab for Mr. Garcia's logbook. Mr. Garcia consented.

During this exchange, Trooper Percy arrived to assist. As instructed, Mr. Torres got out of the truck. Trooper Percy watched the two men while Trooper Gaither entered the truck's cab to perform the inspection and look for Mr. Garcia's logbook. Upon entering the cab, Trooper Gaither smelled a strong odor of marijuana. He summoned Trooper Percy, who also smelled the odor once he was inside the cab. The two officers observed four brown suitcases in the "sleeper" area of the cab. One suitcase's side pocket was slightly unzipped. Trooper Gaither could see duct tape through the opening, and when he squeezed the bag he felt "brick-like" objects which he believed were marijuana.

Following this discovery, Mr. Garcia and Mr. Torres were arrested and handcuffed. A K–9 unit was called to the scene, and performed a search of the cab that indicated the presence of an illegal substance. After this positive result, Trooper Gaither performed a full-scale search of the cab. In addition to the marijuana found in the suitcases, Trooper Gaither also discovered marijuana packages behind the bunks in the sleeping area. No evidence of personal marijuana use was found in the cab or the bunk area.

Special Agent Gerald Glowacki arrived at the scene, read Mr. Garcia his *Miranda* rights and took him to headquarters for questioning. Mr. Garcia told Agent Glowacki that he had been employed by the Tex–Mex trucking company, a Wisconsin based business, for about six months. He stated that two days earlier his truck had needed repairs in Milwaukee and that the company instructed him in the interim to join Mr. Torres in Chicago as a co-driver on Mr. Torres' assigned run. Mr. Garcia understood from Mr. Torres that they were delivering a load of cheese to Dallas, Texas. Mr. Garcia also told Agent Glowacki that once they got to Dallas, Mr. Torres got them a hotel room and they went to dinner. During the meal, Mr. Torres left Mr. Garcia alone in the restaurant for about forty minutes. Both men then returned to the hotel; shortly thereafter, Mr. Torres left again. After his return, Mr. Torres acted disgusted with the company and told Mr. Garcia that they had to leave immediately to take the cheese to St. Louis, Missouri.

Mr. Garcia told Agent Glowacki that they soon left for Missouri, sharing the driving. Mr. Garcia stated that Mr. Torres took over the driving near the Missouri state line and that Mr. Garcia had slept through the rest of the trip until the men had reached Illinois. When Mr. Garcia awoke, he was told by Mr. Torres that they had delivered the cheese in St. Louis and were heading back to Wisconsin. At this time, Mr. Garcia started driving and shortly afterward was stopped by Trooper Gaither. Mr. Garcia admitted he had never seen the load of cheese or the bill of lading for the cheese during the trip. Mr. Garcia denied any knowledge that the truck contained marijuana and denied ever using marijuana.

Mr. Torres was also questioned following his arrest. He told Trooper Percy that the marijuana was his and that Mr. Garcia had nothing to do with the drugs. Next, Mr. Torres spoke with Agent Glowacki. After signing a waiver of his right to remain silent, Mr. Torres told Agent Glowacki that he had purchased the marijuana in Dallas

and planned to sell it himself in Milwaukee. Mr. Torres stated: "I wanted to get rich quick. I took a chance and lost. Now I got to do the time, and I'm prepared to do it." Mr. Torres also told the agent that he had a six-year old conviction for drug sales in Milwaukee. Mr. Torres stated that his only drug associates were his brothers, and that Mr. Garcia was unaware of the marijuana. In a subsequent interview with Special Agent John Schaefer, Mr. Torres again maintained that Mr. Garcia did not know about the drugs in the truck. Mr. Torres also revealed that there had never been any cheese in the truck and thus no delivery in St. Louis.

Both Mr. Torres and Mr. Garcia were charged with knowingly and intentionally possessing over 100 kilograms of marijuana with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. Prior to trial, both defendants moved to have the evidence seized from the truck suppressed as the fruit of an illegal search. Following a hearing, the district court ruled that the evidence was admissible and not the result of an unconstitutional search. After this adverse ruling, Mr. Torres pled guilty, reserving his right to appeal the legality of the search. Mr. Garcia proceeded to trial.

The day after Mr. Torres pled guilty, the government moved to suppress the portion of Mr. Torres' statements that exculpated Mr. Garcia. Following a hearing, the trial judge granted the government's motion. Preserving his objection, Mr. Garcia agreed to a stipulated statement to be read to the jury regarding Mr. Torres' confession. At trial, the jury was told that Torres had pled guilty to a charge that "he knowingly and intentionally possessed approximately 260 pounds of marijuana which he intended to distribute to others." The jury was also told that Mr. Torres "said that he was going to sell the marijuana in Milwaukee." However, the jury was not permitted to hear Mr. Torres' assertion that Mr. Garcia was not involved in the drug deal and unaware the truck contained marijuana.

At trial, the government's theory of the case was that Mr. Garcia was aware that he was transporting drugs for primarily two reasons: (1) Mr. Garcia must have known no cheese was ever carried or delivered because the trailer was empty, and (2) Mr. Garcia must have smelled marijuana in the cab because the police immediately noticed a strong odor of the drug. The government presented evidence consistent with the foregoing description of the stop and subsequent search of the truck. Government witnesses testified that a trucker would have known whether a trailer was empty or full merely by pulling it, and that a trucker would always have knowledge of his bills of lading since that is how he is paid. The government also introduced the marijuana found in the truck and displayed it to the jury. Despite defense counsel's objection, containers of marijuana remained open in the courtroom throughout the defendant's case-in-chief.

Mr. Garcia took the stand on his own behalf and denied any knowledge of the marijuana. He testified that he had worked for Tex–Mex for approximately six months and before that had driven a truck for his stepbrother in Texas. He stated that he had never used drugs or alcohol. Mr. Garcia also stated that he had passed a drug test when he acquired his chauffeur's license in 1989. He testified that he walked away from any group he knew was using marijuana and denied ever smelling marijuana.

Mr. Garcia also testified to the events of his trip with Mr. Torres. According to Mr. Garcia, he did not find the change in travel plans odd since Tex–Mex had changed his travel plans in the past. Further, he claimed that he did not see the contents of the trailer or the shipping papers because he was only the relief driver and the primary driver usually handles those aspects of trips. Mr. Garcia testified that, in his work experience, employees who questioned their superiors often lost their jobs; therefore, he kept quiet.

Mr. Garcia also testified that he had noticed the smell of air freshener in the cab, but did not find it peculiar since it was not unusually strong and many truckers use some type of freshener in their cabs. Mr. Garcia stated that he never smelled any-

thing else "funny" in the cab, and that although he moved the suitcases off a bunk to sleep, he never opened them. Nor did he ask Mr. Torres about their contents since many truckers carry bags on long trips and he believed it was none of his business.

At the close of the trial, Mr. Garcia was convicted of possession with intent to distribute over 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district judge refused to give Mr. Garcia a downward departure for being a minor or minimal participant and sentenced him to five years imprisonment. This timely appeal followed.[1]

On appeal, Mr. Garcia argues that the district court erred in excluding Mr. Torres' statements exculpating him.[2] Because we believe it was error for the district court to refuse to admit the statements of Mr. Torres which exculpated Mr. Garcia, we reverse Mr. Garcia's conviction.

## II.

■ As outlined above, following his arrest Mr. Torres made several statements to police admitting his involvement and stating that Mr. Garcia had no knowledge of the marijuana found in the truck. The trial court excluded these statements as hearsay not within any established exception. Mr. Garcia argues, as he did before the trial judge, that these statements fall under the "statements against interest" exception to hearsay, and thus are admissible evidence. FED.R.EVID. 804(b)(3).

We note that our review of this issue is limited since evidentiary rulings are left to the discretion of the trial court. *United States v. Garcia*, 897 F.2d 1413, 1421 (7th Cir.1990). Specifically, "a trial court's determination of the trustworthiness of an out-of-court statement should be upheld unless the finding is clearly erroneous." *Id.* Moreover, we will not reverse if the erroneous evidentiary ruling resulted only in

harmless error. *United States v. Zapata*, 871 F.2d 616, 622 (7th Cir.1989). With these principles in mind, we examine whether Mr. Torres' statements fall within the ambit of Rule 804(b)(3).

Federal Rule of Evidence 804(b)(3) permits certain testimony to be admitted at trial if the declarant is unavailable as a witness:

> A statement which was at the time of its making ... so far tended to subject the declarant to civil or criminal liability, ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. *A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.*

*(emphasis added )*. Mr. Garcia can prevail only if he satisfies the following three-part test: (1) Mr. Torres must have been unavailable as a witness, (2) Mr. Torres' statements exculpating Mr. Garcia must have been against Mr. Torres' penal interest, and (3) there must have been corroborating circumstances which clearly indicate the trustworthiness of Mr. Torres' statements. *Garcia*, 897 F.2d at 1420.

Both parties agree that the first two prongs of the test are satisfied. Mr. Torres invoked his Fifth Amendment privilege and refused to testify because his appeal regarding the constitutionality of the truck's search was pending. *See id.* (witness' refusal to testify makes him an unavailable witness). In addition, Mr. Torres' statements admitting the marijuana was his and stating that Mr. Garcia knew nothing about it clearly exposed him to criminal liability and were against his penal interest. Thus, the primary dispute is whether corroborating circumstances exist which clearly indicate the trustworthiness

---

1. Mr. Torres also appealed, but his appeal was severed by order of this court.

2. Mr. Garcia also claims that the trial court made several other errors: (1) refusing to suppress the marijuana found in the truck, (2)

giving the jury an "ostrich instruction," (3) denying his motion to close the open containers of marijuana during his case-in-chief, and (4) refusing to give him a downward adjustment for being a minor or minimal participant.

of Mr. Torres' statements exculpating Mr. Garcia.

Although Rule 804(b)(3) does not describe exactly what type of corroborating circumstances clearly indicate trustworthiness, the case law identifies some circumstances particularly relevant to our inquiry. In *United States v. Silverstein*, 732 F.2d 1338, 1346 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985), we looked at the relationship between the confessing party and the exculpated party and concluded that it was likely that the confessor was fabricating his story for the benefit of a friend. Thus, if the two involved parties do not have a close relationship, one important corroborating circumstance exists.

In *Garcia*, we identified two additional factors which supported the trustworthiness of the testimony: (1) the confessor made a voluntary statement after being advised of his *Miranda* rights, and (2) there was no evidence that his statement was made in order to curry favor with authorities. 897 F.2d at 1421.

A review of the record reveals that these same factors are present in the instant case. There was no evidence that Mr. Torres and Mr. Garcia were friends. In fact, from the record it appears that the two men had only spoken briefly at work on a few occasions. Further, Mr. Torres voluntarily made the statements inculpating himself and exculpating Mr. Garcia shortly after being advised of his *Miranda* rights. Nothing in the record suggests that his statements were made to curry favor with authorities.[3] Finally, we note that Mr. Torres repeated the exculpatory statements on several occasions and inculpated *only himself* when he pled guilty, under oath, before the trial judge. *Cf. United States v. Moore*, 936 F.2d 1508, 1517 (7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 607, 116 L.Ed.2d 630 (1991) (requisite corroborating circumstances were not present since the declarant recanted much

of his unsworn post-arrest statement under oath during a court proceeding). *See also United States v. Lopez*, 777 F.2d 543 (10th Cir.1985).

Despite the fact that this case mirrors others where we have held that the requisite circumstances were present, the government contends that Rule 804(b)(3) has not been satisfied. The government argues that Mr. Torres' statements to police, when viewed as a whole, contain several inconsistencies that cast doubt on their veracity. The government claims these inconsistencies demonstrate that Mr. Torres was protecting his drug source, and thus was probably protecting Mr. Garcia as well. We do not find this argument convincing. The inconsistencies relate to the provider and purchase price of the marijuana and are relatively minor.

The government's real complaint is that Mr. Torres would not identify his drug source. This is a very different matter from exculpating Mr. Garcia. Mr. Torres could have several reasons for refusing to reveal his source—in fact, one of his statements indicated that he was afraid he would be killed if he told the police from whom he obtained the marijuana. Moreover, the fact that Mr. Torres protected his source, who may have been a friend, does not mean that he was protecting Mr. Garcia, a virtual stranger.

The government points to another statement by Mr. Torres in an attempt to demonstrate that the requisite circumstances were not present. In addition to telling police that Mr. Garcia had nothing to do with the marijuana, Mr. Torres also said that Mr. Garcia had to know something was "wrong," referring to the presence of the marijuana-laden suitcases in the cab. We believe this statement only strengthens the trustworthiness of Mr. Torres' other statements. The fact that, in Mr. Torres' opinion, Mr. Garcia should have known something was "wrong" shows that Mr.

---

**3.** Mr. Torres did enter into a plea agreement with the government but it was merely a conditional plea agreement which reserved Mr. Torres' right to challenge the district court's ruling on the motion to suppress the marijuana.

Mr. Torres did not agree to cooperate with the government; thus he was not recommended for a downward departure and received the statutory minimum of ten years at his sentencing.

Torres did not tell Mr. Garcia about the drugs in the truck. Therefore, we do not believe that this statement detracts from the circumstances which support the reliability of Mr. Torres' statements exculpating Mr. Garcia.

▮ After examining the government's arguments we are left with the impression that the government misconstrues the requirements of FED.R.EVID. 804(b)(3). In its brief, the government argued that Mr. Torres' statements exculpating Mr. Garcia were not clearly corroborated. Rule 804(b)(3) does not require that the statements themselves be clearly corroborated. Rather, the rule requires "corroborating circumstances [that] clearly indicate the trustworthiness of the statements." FED.R.EVID. 804(b)(3). Moreover, the corroboration requirement of 804(b)(3) is a preliminary question as to the admissibility of evidence, not an ultimate determination as to the weight to be given such evidence. The district judge does not need to be completely convinced that exculpatory statements are true prior to their admission. Such a high burden was not intended by the corroboration requirement of 804(b)(3). The district court must find only that sufficient corroborating circumstances exist and then permit the jury to make the ultimate determination concerning the truth of the statements.[4]

As described above, sufficient corroborating circumstances exist to clearly indicate the reliability of Mr. Torres' statements exculpating Mr. Garcia. There is no indication that Mr. Torres had any motive to fabricate the statements, a prospect the corroboration requirement was designed to prevent. "The requirement of corroboration should be construed in such a manner as to effectuate its purpose of circumventing fabrication." FED.R.EVID. 804 advisory committee's note. Therefore, we hold that the requisite corroborating circumstances exist in this case and that the trial court's

exclusion of Mr. Torres' statements exculpating Mr. Garcia was clearly erroneous.

▮ Moreover, we do not believe that the trial court's error was harmless. "Only if we are convinced that the error did not influence the jury or had only a very slight effect, and can so say with fair assurance, should we hold the error as harmless." *Zapata*, 871 F.2d at 622. We are satisfied that not permitting the jury to hear Mr. Torres' statements exculpating Mr. Garcia had more than a slight effect on the jury's verdict.

Mr. Garcia's only defense was that he was unaware of the marijuana's presence. Evidence of Mr. Garcia's guilt was rather thin. According to the government, Mr. Garcia *must* have known that the truck was empty from driving it and *must* have known that the suitcases were full of marijuana from smelling it. But Mr. Garcia testified that he had never smelled marijuana before and that he did not identify the odor of marijuana in the truck. He also testified that he could not tell whether the truck was empty or not just from driving it. If Mr. Garcia was permitted to supplement his own testimony with Mr. Torres' statements, we believe the jury's verdict may have been different.

▮ Because the foregoing analysis requires a reversal of Mr. Garcia's conviction, we do not need to reach the defendant's remaining arguments. However, we are constrained to mention one error that occurred during trial. Pursuant to the defendant's request, the trial court should have directed the government to close the marijuana containers in the courtroom at the conclusion of the government's case. Permitting the containers to remain open and emit the odor of marijuana during the defendant's case-in-chief was erroneous. This is particularly so where the odor of marijuana in the truck's cab was a key issue. The government's refusal to close the containers appears to be no more than

---

**4.** We note that if Mr. Torres' statements had inculpated Mr. Garcia, it is likely that the government would be arguing that these same circumstances showed that the statements were sufficiently trustworthy; an argument with

which we would agree. Because the same corroborating circumstances standard applies to both inculpatory and exculpatory statements, we must conclude that the requirement is met in this case. *See Garcia*, 897 F.2d at 1421.

an effort to produce a condition which supported its theory of guilt—an effort carried out during that portion of the trial given over to the defendant for his presentation of evidence. Such a tactic was improper and the court should have precluded it.

### III.

Because the trial court erred in granting the government's Motion to Suppress Mr. Torres' statements exculpating Mr. Garcia, Mr. Garcia's conviction is REVERSED and the case is REMANDED to the district court.