DECISION AND ORDER
STADTMUELLER, Chief Judge.
I. INTRODUCTION
If wishes were horses, beggars might ride ... and, if the defendant’s lawyers’ assertions were fact, he might have a shot at winning his appeal — or so it would appear in the opinion of the circuit panel that heard this ease.
But a simple reality check tells us that wishes are not horses, nor, in all instances, are lawyers’ assertions fact. Thus begins the latest chapter in a criminal prosecution, scourged with an incredibly tangled history, seemingly fraught with landmines at every turn.
This case comes before the court following remand by the court of appeals, for further findings as to certain evidentiary matters arising during the underlying trial.
Beyond the jury trial, Mr. Nagib’s ease has been the subject of a 2255 proceeding in this court reported at 844 F.Supp. 480 (E.D.Wis. 1993), as well as three separate circuit opinions reported at 936 F.2d 292 (7th Cir.1991), 44 F.3d 619 (7th Cir.1995) and 56 F.3d 798 (7th Cir.1995).
By way of procedural background, Nagib was charged along with two codefendants. Walter Atri and Levon Dumont, with conspiracy to traffic in LSD and hallucinogenic mushrooms.
The case went to trial before a jury in March 1990, however, on the morning of trial, Dumont entered a plea of guilty and at the conclusion of the trial, Atri and Nagib were convicted on all charges. On September 28, 1990, Nagib was sentenced to a term of 235 months imprisonment. A subsequent appeal was dismissed as untimely. 936 F.2d 292 at 295, cert. denied, 502 U.S. 950, 112 S.Ct. 399, 116 L.Ed.2d 349 (1991), Fed. R.App.P. 4(b). With the aid of new counsel Nagib sought and obtained relief in this court under 28 U.S.C. § 2255, as consequence of which, Nagib was re-sentenced on December 10, 1993. At that time, he received a sentence of 151 months or 84 months less than the original sentence, because in the interim the sentencing commission eliminated the weight of the medium or carrier of the substance involved in computing the offense level. An appeal followed and on January 13,1995, the court of appeals ordered that the case be remanded in order that this court make a finding as to whether Nagib timely requested that his lawyer file a notice of appeal in October 1990. U.S. v. Nagib, 44 F.3d 619, 622-23 (7th Cir.1995). However, prior to remand the panel reconsidered its remand, accepted Nagib’s appeal and addressed the merits. U.S. v. Nagib, 56 F.3d 798 (7th Cir.1995). In reaching the merits, the court found that it was error for this court to have excluded statements attributed to Levon Dumont during his change of plea hearing. Id. at 805. The court further determined that this court should have identified the specific exception among those enumerated in Rule 404(b), Fed.R.Evid., permitting the receipt of certain bad acts evidence. Id. 806-807. This evidence related to a police stop of Nagib’s van in July 1989, during which illegal drugs were found. The court specifically remanded, “the question of prior bad act evidence for reconsideration and explanation in light of all the requirements of Rule 404(b), particularly with respect to any unfair prejudice resulting therefrom.” Id. In addition, the court directed *655 that this court consider the combined effect of its actions under Rules 804(b)(3), 404(b) and 408. After receiving memoranda from counsel for the parties, a hearing was held on March 1, 1996, a transcript of which is appended and incorporated herein by reference. Following receipt of further written submissions from counsel, the court now turns to the remand.
II. FACTUAL BACKGROUND
Many, but certainly not all, of the relevant facts have been reported in the three prior circuit opinions. To summarize, on September 14,1989, Levon Dumont arranged to ship a package, later discovered to be laden with over 60,000 hits of LSD and 5 pounds of hallucinogenic mushrooms, from Portland, Maine to Milwaukee, Wisconsin via United Airlines. In arranging the shipment with United personnel Dumont brought Nagib to the counter, for ultimately it was Nagib whose name was listed as addressee, and it was he who provided the Milwaukee address for the shipment.
When United employees discovered that the package contained drugs, Portland authorities were notified, who in turn notified Milwaukee police. When Dumont and code-fendant Walter Atri attempted to claim the package at the United counter in Milwaukee, after their arrival on a U.S. Air flight that evening, they were arrested. The following morning Nagib was recognized in the Portland airport by United employees, who tipped authorities as he boarded a United flight to Milwaukee. Upon arrival, he too was arrested. The police seized his bag which contained among other items a passport, a pair of scissors, envelopes with Na-gib’s handwriting and rolls of tape similar to that used to seal the package containing the contraband.
A Milwaukee grand jury returned an indictment charging Nagib, Atri, and Dumont with conspiring to distribute LSD and conspiring to distribute a substance containing Psilocybin, in violation of 21 U.S.C. §§ 846(a)(1), as well as 18 U.S.C. § 2. Du-mont and Atri were farther charged with interstate travel to facilitate a drug trafficking offense.
On the morning of trial, Dumont changed his plea to guilty with reference to the LSD charge. At the change of plea hearing, Du-mont admitted that he shipped a box containing LSD from Portland to Milwaukee with intent to distribute the contraband at a Grateful Dead concert in Wisconsin that weekend. While he suggested others might have been involved, he did not identify them. After the prosecution gave its version of Dumont’s conduct, Dumont accepted it with some clarifications, as set out at Nagib II, 66 F.3d at 803.
In July 1989, just two months prior to these events, a van driven by Nagib, which he had purchased from Dumont, was stopped in upstate New York by police who found drugs in the van. During Nagib’s cross-examination at trial, the government questioned him about his familiarity with police stops of vehicles in order to demonstrate a motive for having used United Airlines as the carrier for the contraband rather than his van or other modes of transportation. Only when Nagib began to waffle in his answers did the government’s questions become more pointed. Over defense counsel’s objection, the court allowed inquiry as to whether Na-gib had a personal experience with authorities finding controlled substances in his van following a police stop. Nagib invoked his right against self-incrimination and the government moved on, leaving the jury to draw the obvious inferences — that he had such an experience, and therefore, a motive not to be directly associated with the transportation of controlled substances.
III. SCOPE OF MANDATE
The directions of the court of appeals to this court on remand are clear, and the court complies with them below. On remand, a district court must follow the mandate of the appellate court, and the appellate court opinion sets forth the law of the case. Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc., 669 F.2d 490, 493 (7th Cir.), cert. denied, 469 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982). “What remains within the power of decision of the district court after remand depends, of course on the scope of the mandate.” IB Moore’s Federal Practice *656 ¶ 0.404[10]. Here, the mandate is very specific, and this court’s task is clear.
At the same time, as noted during the March 1,1996 hearing, this court has serious concerns about the record upon which the court of appeals reached its mandate, since events occurring during the trial and the evidence presented to the jury were represented on appeal in a way that simply does not square with the trial record. Even more troubling is the fact that, inexplicably, the government allowed the underpinnings of Nagib’s arguments on these issues to go unchallenged, while at the same time ignoring other significant evidence considered by the jury.
In part, the court of appeals mandate is predicated on a finding that “The district court held that Dumont’s transcript was inadmissible relying upon United States v. Powell, 894 F.2d 895, 901 (7th Cir.), cert. denied, 495 U.S. 939, 110 S.Ct. 2189, 109 L.Ed.2d 517 (1990)....” U.S. v. Nagib, 56 F.3d 798, 803 (7th Cir.1995). Although the court gave preliminary indications on which way it was leaning, it never made such a ruling. On appeal, Nagib represented that the court ruled to exclude Dumont’s change of plea transcript. Brief of Defendant-Appellant Kareem Nagib at 19. Without apparent reflection, the government took the same position. Brief of Plaintiff-Appellee at 12.
In fact, the issue arose on the record on March 5,1990, after Dumont’s change of plea hearing, when Nagib’s attorney raised the possibility of calling Dumont as a witness or admitting the change of plea transcript under Rule 804. Trial Tr. Vol. 1 at 10 et seq. The government acknowledged that Dumont still faced “plenty of criminal exposure” and argued that the change of plea testimony would be inadmissible as former testimony. Trial Tr.Vol. 1 at 19. After hearing counsel’s arguments, the court gave very preliminary indications of its views but left it to counsel as to which course they would pursue. Trial Tr.Vol. 1 at 26. Eventually, Nagib’s counsel subpoenaed Dumont and was prepared in the alternative to seek admission of the change of plea testimony. The court requested written memoranda. Trial Tr.Vol. 2 at 417. After examining counsel’s submissions, the court responded on March 7,1990:
Mr. Zievers, I have taken an opportunity to review your memorandum. There’s also been filed a motion to quash the subpoena that was served on Mr. Dumont, and I’ve taken a look at some authority. And specifically, if you don’t have it, I would like you to take a look at a very recent Seventh Circuit case, United States versus Powell.... You may want to run up to the library on the fourth floor during this recess. It was decided by the Seventh Circuit on January 31st of this year.
I believe in large measure that insofar as Mr. Dumont is concerned, based upon Mr. Walrath’s submissions unless you’ve got something to the contrary, I’m prepared to grant the motion to quash. And I think the entirety of your position may be subsumed in the Seventh Circuit’s opinion in the Powell case dealing with the statements made by a defendant at a Rule 11 hearing in terms of their being admissible as either impeachment or corroborating material in the context of a trial of the codefendants.
So if you’re prepared to deal with that at the appropriate time, I at least want you to be aware of the authorities that the court is working with at this point.
Trial Tr.Vol. 3 at 594-95 (emphasis added). Furthermore, the court indicated later that it was waiting for Nagib’s counsel to press the issue if he still wished to introduce the change of plea transcript.
At the conclusion of the trial day on March 7, the court addressed Dumont’s counsels’ concerns about the subpoena:
Well, I would suggest you take it up with Mr. Zievers in light of the ease that I brought to counsel’s attention which apparently you have also, Mr. Walrath made. The witness hasn’t been proffered so Pm. not going to assume that Mr. Zievers is going to continue to press the matter. I would suggest you talk to him and perhaps you can work out some schedule to take the matter up in the morning or have another member of your office appear if that be required.
*657 Trial Tr.Vol. 3 at 662 (emphasis added). The issue was never raised with the court again.
Another indication that the court did not rule on the issue is that it never ruled on whether Dumont had a Fifth Amendment privilege. Under Rule 804, “unavailability as a witness” is defined to include situations in which the declarant “is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant’s statement.” Fed.R.Evid. 804(a)(1). This rule contemplates that a court ruling is required as to whether or not a witness is unavailable. Fed.R.Evid. 804 Advisory Committee Notes, 1972 Proposed Rules, Note to Subdivision (a). Nagib and the government both conceded at trial, perhaps correctly, that Dumont was unavailable. However, the lack of a court ruling or a stipulation on Dumont’s privilege is another indication that the court never ruled as to the admissibility of the change of plea transcript.
The court believes it is clear from the record that it made no ruling on the motion to quash or on the admissibility of the change of plea testimony. Instead, the record shows that, without explanation, Nagib’s counsel dropped his attempt to introduce the transcript. Perhaps Nagib’s counsel agreed with the court’s view of Powell. Perhaps he believed that Dumont’s statement would not help his client. All this is speculation. What is certain is that the court did not rule on the admissibility of the change of plea testimony because Nagib’s counsel dropped the issue.
As Nagib’s counsel ably points out in their most recent brief, our justice system is an adversary process. Parties are responsible for raising the issues they believe are beneficial to them. If they do not, they pay a price. Here, Nagib’s trial counsel subpoenaed Dumont and indicated that if the subpoena were quashed, he would seek to have the change of plea testimony admitted. As the court did not rule in the manner suggested, Nagib’s appellate counsel is in no position to now avoid the effect of trial counsel’s strategy.
IV. PRIOR BAD ACT EVIDENCE
“Bad acts” evidence is admissible where:
(1) it is directed toward establishing a matter in issue besides the defendant’s propensity to commit the crime charged; (2) it is similar enough to be relevant; (3) it is sufficient to support a jury finding that the defendant committed the prior act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.
Nagib II, 56 F.3d at 806 (citing U.S. v. Lennartz, 948 F.2d 363, 366 (7th Cir.1991)).
Here, the evidence regarding the stop of Nagib’s van was directed primarily toward establishing Nagib’s motive in not transporting the package containing drugs in September 1989. During the July 1989 stop, the police found drugs in Nagib’s van, and those drugs were then associated with him. Based on that experience, it was more than plausible that Nagib would afterward be wary of allowing drugs to be transported in his van. The evidence at trial showed that Nagib’s van was going to be driven to Wisconsin from Portland by someone else, while he chose to fly. In spite of this, Nagib allowed Dumont’s package to be shipped for $47.25 on the airline. It was therefore proper to infer, based on this plausible motive and upon his decision not to offer transport of the package in his van, that Nagib knew that drugs were in the package.
The evidence of the van stop was similar enough to the present case to be relevant. In both situations, Nagib’s van was involved. In both situations, drugs were involved. In the earlier situation, drugs in Nagib’s van were discovered when the van was stopped. In the later situation, Nagib did not offer to transport the package, which contained drugs, in his van. Thus, there was a similar risk of drugs in Nagib’s van being attributed to Nagib, which made the prior act evidence relevant to this ease.
The evidence was sufficient to support a jury finding that Nagib committed the prior act. The cross-examination was aimed at eliciting testimony from Nagib that he knew drugs found in his van could be associated with him. Previously, the prosecution had asked Nagib whether drugs found in his van might be associated with him. Trial Tr. at *658 685. Nagib indicated it was possible, but that he did not know what police practices and procedures in that regard were. Id. at 686. The prosecution then attempted to establish that Nagib had personal knowledge that drugs found in his van could be associated with him. The question asked was: “No personal experience with those police procedures of your van being pulled over and drugs found in it being associated with you?” Id. at 686. An affirmative answer, based on personal experience, would have established, more conclusively than previous testimony, that Nagib knew that drugs in his van could be associated with him. If Nagib had testified about the van stop, this would have certainly provided evidence from which a jury could find the stop and search occurred. At any rate, there was no dispute between the parties that the stop of the van occurred and that suspected controlled substances were seized from it and attributed to Nagib.
Finally, there was not sufficient prejudice to warrant exclusion of this evidence. Relevant evidence may be excluded if the danger of unfair prejudice substantially outweighs its probative value. Fed.R.Evid. 403. Here, the only plausible prejudice would be an inference that because Nagib had previously possessed drugs, he was likely to possess them again. However, in this case, Nagib readily acknowledged a lifestyle that included possession and use of controlled substances in the past. Nagib stated that he had purchased LSD and mushrooms. Trial Tr. at 675, 677, 679. He estimated the cost of a single dose of LSD in blotter acid form. Id. at 676. Nagib also gave the price of marijuana that he had purchased. Id. at 680. Nagib indicated he had used mushrooms. Id. at 678. He stated he used hallucinogens. Id. at 678. He said that “perhaps” he used LSD on a regular basis. Id. at 679. Thus, the jury was well able to draw a damaging inference about Nagib’s own purchase, knowledge, and use of drugs from this testimony. In light of this, the additional information that in a specific instance, drugs were found in Nagib’s van, was only marginally prejudicial to him, if at all. Any prejudice to Nagib from this evidence was, at best, minimal; it did not substantially outweigh the evidence’s value in proving that Nagib knew that drugs found in his van could be associated with him.
V. HARMLESS ERROR ANALYSIS OF THE EXCLUSION OF DUMONT’S CHANGE OF PLEA TESTIMONY
Accepting the correctness of the court of appeals analysis and mandate, Nagib suffered no harm in Dumont’s change of plea testimony not being placed before the jury, U.S. v. Garcia, 986 F.2d 1135 (7th Cir.1993), notwithstanding.
In Garcia, the court of appeals held that it was not harmless error to exclude a statement against interest, by a codefendant who pled guilty, that a defendant did not know drugs were present. Id. at 1141. The test the court used was that “[ojnly if we are convinced that the error did not influence the jury or had only a very slight effect, and can so say with fair assurance, should we hold the error as harmless.” Id. (quoting U.S. v. Zapata, 871 F.2d 616, 622 (7th Cir.1989)).
The Garcia court concluded that “not permitting the jury to hear Mr. Torres’s statements exculpating Mr. Garcia had more than a slight effect on the jury’s verdict.” Id. The government’s case against Garcia depended on the inference that he was aware of the presence of marijuana in the truck from its odor. Id. “Mr. Garcia’s only defense was that he was unaware of the marijuana’s presence,” and his testimony indicated he could not identify the odor of marijuana nor tell whether the truck was full or empty. Id. Thus, had Garcia been permitted to supplement his own testimony with the exculpatory statements, the court believed the jury’s verdict might have been different.
Two critical factors distinguish this case from Garcia and demonstrate why the exclusion of Dumont’s change of plea testimony was harmless. First, Dumont’s statement was not exculpatory. Second, the government’s case against Nagib was stronger than the case against Garcia.
In Garcia, the exculpatory statements clearly dissociated Garcia from the crime. After his arrest, Torres told a trooper “that the marijuana was his and that Garcia had *659 nothing to do with the drugs.” Id. at 1137. Later, Torres stated that “he had purchased the marijuana” and that he “planned to sell it himself.” Id. at 1137-38. He also said “that his only drug associates were his brothers and that Mr. Garcia was unaware of the marijuana.” Id. at 1138. Later, Torres told an agent that Garcia did not know about the drugs in the truck. Id. Torres’s statements, if believed, tended to directly and completely exonerate Garcia. The statements showed that Torres was entirely responsible for the marijuana and that Garcia knew nothing about the drugs.
By contrast, nothing in the change of plea transcript indicated that Dumont claimed sole responsibility for the drugs or that Na-gib did not know about them. At the change of plea hearing, Dumont initially stated that he was “the one who said there was no lamp in the box” and “who said that there might be a disc player in the box.” Nagib II, 56 F.3d at 803; Excerpt of Transcript of Change of Plea at 10. However, later he stated “then I thought up the scheme of— well, he said, there’s — and then I think I said — well he said, there’s no lamp in the box.” Nagib II, 56 F.3d at 803; Excerpt at 11. The most generous (to Nagib) view of this contradictory statement is that Dumont, not Nagib, conceived of and executed the plan to say that there was no lamp in the box. Dumont also stated that he “was the one that was going to pick [the box] up.” Nagib II, 56 F.3d at 803; Excerpt at 10. Dumont did not recall whether he told the airline employee that Nagib would retrieve the box. Nagib II, 56 F.3d at 803; Excerpt at 10. Moreover, Dumont said that Nagib supplied the Milwaukee address. Nagib II, 56 F.3d at 803; Excerpt at 11.
The transcript, assuming a jury believed it and viewed it in the light most favorable to Nagib, does nothing more than indicate that Dumont, not Nagib, stated there was no lamp in the box, and that Dumont, not Nagib, was to pick up the box in Milwaukee. Furthermore, the statement corroborates that Nagib supplied the Milwaukee address. Most importantly, nothing in Dumont’s statement directly exonerates Nagib. Rather than exculpate Nagib, the statement .confirms that he participated in the transaction at the United Airline counter. In addition, part of the transcript indicates others were involved and is against Dumont’s penal interest by implicating him in the conspiracy. Specifically, when Dumont was asked whether other individuals were involved with the conspiracy, Dumont replied: “Well, there were people like when I would get to the show that they would know that, that there was LSD available if they needed it, and then they would take it and resell it to somebody else. There were other people.” Nagib II, 56 F.3d at 802-03; Excerpt at 3-4. Combined with other evidence, this statement allows the inference that Nagib was one of those others.
The other critical factor is that, unlike Garcia, the government relied on more than an inference in its case against Nagib. First, the police found rolls of tape of the kind used to seal the box containing the drugs in a bag which contained Nagib’s passport and portfolio. Trial Tr.Vol. 2 at 323-24, 403-08, 640. Second, the circumstances of the transaction to ship the package were probative of Na-gib’s involvement in the conspiracy. Sandy Prox, the airline agent at the counter, testified that Nagib made the comment that the package contained “a backpack and some of her clothing.” Trial Tr.Vol. 1 at 199. Moreover, Dumont appeared to Prox to be asking Nagib because Nagib knew what had been put in the box. Id. at 200. Assuming that Nagib did not know what was in the box, it is unclear why he would indicate that he did. On the other hand, if Nagib did know what was in the box, he appears to have played a role in attempting to deceive Ms. Prox.
Other evidence implicated Nagib as an active drug distributor. Government Exhibit No. 27A is a envelope with writing on it. Nagib acknowledged being the author of at least one address on the envelope. Trial Tr.Vol. 4 at 702, 717-18. On the envelope are written “X 1400 OZ,” “Weed, 100 OZ,” and “L 75 SH, 100 gel,” and “SHRMS, 150 OZ.” The government argued in its closing argument that the drug notes were in Na-gib’s handwriting. Trial Tr.Vol. 4 at 808. The jury had this envelope and several examples of Nagib’s admitted handwriting, and on *660 this basis, they could have found that Nagib wrote the notations and that those notations were related to drug trafficking. In addition, Prox’s unambiguous testimony squarely supported Nagib’s knowledge of the package contents.
Finally, in addition, the decision to ship the package via United Airlines when the defendants were flying a different airline or a different flight evinces a knowing decision by defendants to distance themselves from the package. Thus, the government presented substantially more evidence against Nagib on the issue of his knowledge of the drugs than was presented in Garcia.
In these circumstances, the court can say with assurance that the admission of Du-mont’s change of plea testimony would not have altered the jury’s verdict. Dumont’s statement was not exculpatory, certainly not in the same sense as the statement in Garcia. There was other evidence that linked Nagib to the package containing drugs. Finally, there was evidence that Nagib actively played a role in concealing the contents of the box. Thus, the exclusion of Dumont’s change of plea testimony was harmless.
VI. ANALYSIS OF COMBINED ACTIONS
Following the court of appeal’s instructions, the court has considered the prior act evidence under Rule 404(b) and found it admissible. Moreover, the probative value of that evidence was not substantially outweighed by its prejudicial effect under Rule 403.
I have also determined that the exclusion of Dumont’s change of plea testimony under Rule 804(b)(3) was harmless. Dumont’s statement, by its nature, would have had only slight, if any, effect on the jury, because it did not exculpate Nagib.
In sum, I believe the verdict and judgment are sound. Beyond the bad acts questioning and the exclusion of Dumont’s statement, there was abundant evidence, discussed in Part IV above, to support the jury’s verdict. For these reasons, the court finds no reason to disturb the verdict and the judgment of conviction.
Suffice it to say, Judge Easterbrook had it right the first go around when, in dismissing Nagib’s appeal on procedural grounds, he observed “... the appeal was going nowhere on the merits. We would not have reversed even were we possessed of jurisdiction.” 936 F.2d at 295.
APPENDIX
MARCH 1, 1996

PROCEEDINGS

(Afternoon proceedings commenced at 1:30 P-m.)
THE CLERK: Court calls ease number 89-CR-160, U.S. versus Kareem Nagib for a hearing. Appearances, please.
MR. JACOBS: For the United States, Your Honor, Assistant United States Attorney Matthew L. Jacobs.
MR. WOOD: For defendant Kareem Na-gib, Steve Wood and Gabe Fuentes of Jenner and Block in Chicago. Also present are Mrs. Nagib and Kareem’s sister Nadia in the courtroom.
THE COURT: Mr. Jacobs, good afternoon to you, Mr. Wood, Mr. Fuentes. Good afternoon to you, Mrs. Nagib and Kareem’s sister Nadia. As we are all aware, this ease was remanded from the Seventh Circuit following a decision on a hearing back in June of last year. Thereafter both Jenner and Block on behalf of Mr. Nagib and Mr. Jacobs on behalf of the government submitted some further memoranda to the Court with regard to certain of the issues that continue to surface in connection with this case. And the Court has had an opportunity to consider those memoranda and I would like this afternoon for counsel to address such matters as each side believes appropriate to your respective positions.
The Court has I think some questions in certain areas that you may answer in your comments. If not, I will put them directly to you. So beginning with you, Mr. Wood, or Mr. Fuentes, I’m not sure which of you is going to carry the laboring oar this afternoon, but I’d be interested in any additional comments that you might wish to make.
*661 MR. WOOD: Thank you, Your Honor. Obviously we are here on a remand from a Seventh Circuit decision and we feel that we’re here essentially to address Mr. Nagib’s right to a new trial. Next week will mark, as you may know, the sixth year mark from the beginning of Mr. Nagib’s first trial in this courtroom in this matter and we are here basically seeking to provide Mr. Nagib with an error free fair jury trial. As an initial matter we would just like to reiterate our view that the issues in this case are legal in nature and not factual. As this Court noted in its order setting the remand hearing, we’re not here to address new evidence in this case. No evidence is being presented. Rather, the determinations that we’re making are on legal and not factual issues.
We contend we believe that the decision should have been made in the Seventh Circuit on the numerous briefs that have been filed in this matter and we think the government would agree or at least it was the government’s motion in the Seventh Circuit that the Seventh Circuit should make the decision. That being said, the Seventh Circuit did rule that two errors occurred at Mr. Nagib’s trial. Mr. Dumont’s statements, the Court held, should have been admitted under Rule 804(b)(3) and prior bad act evidence was admitted without proper analysis of the unfair prejudice and probative value which the Seventh Circuit said was very damaging to Mr. Nagib.
THE COURT: On the matter of Mr. Du-mont’s statements in the context of his change of plea hearing back on March 5th of 1990, I’d be interested in factually what you can draw to the Court’s attention in terms of the record on that issue. While I agree with you, certainly we are not here to entertain new evidence, but what I’m interested in is what you believe constituted the record as to Mr. Dumont’s unavailability as well as the record that you believe supports the admission of his statements made in the context of his change of plea.
MR. WOOD: Your Honor, with respect to the unavailability of the witness, I think the government conceded that the witness was unavailable.
THE COURT: Where is that in the trial transcript?
MR. WOOD: I beg your pardon?
THE COURT: Where is that in the trial transcript?
MR. WOOD: Mr. Zievers filed a brief in this matter in which he sought to have admitted the transcript of Mr. Nagib’s change of plea and I believe with respect to argument with Mr. Zievers on that point the government essentially conceded that Mr. Dumont was taking the fifth and would be unavailable. Are you asking for a specific page number in the record?
THE COURT: That is the import of my question, yes.
MR. WOOD: While I’m looking for that cite I might add that the Seventh Circuit, in the Seventh Circuit the government in its briefs conceded as, in its argument to the Seventh Circuit that Mr. Dumont was, in fact, unavailable. And in addition the Seventh Circuit I believe has now ruled and as we pointed out in our memorandum the law of the case at this point is that Mr. Dumont was, in fact, unavailable.
THE COURT: All of what you say may be entirely correct, Mr. Fuentes. But on the other hand, if the record before this Court does not support your position I unfortunately am not in a position to adopt what the Seventh Circuit said if it’s not in the record.
MR. WOOD: Your Honor, let me for the record, but it could be that because of the posture of the argument that was made by the government in the initial trial focusing instead, for example, on 804(b)(1) that the particular issue might not have crystallized in the District Court. But I do have a recollection that in the record the government may have conceded his unavailability. Of course, I could be thinking of his position in the Seventh Circuit.
THE COURT: All right. What I’m going to do, Mr. Fuentes, is give you an opportunity to take a look at that in a little greater detail, perhaps with Mr. Jacob’s assistance. But the reason that I raise the question, of course, is the fact that I have taken an opportunity to review the record and I don’t *662 find the matter addressed in the manner that you suggest. Not only in your comments to the Court today but in the manner in which, or one of your colleagues, I’m not sure who wrote the brief with the Seventh Circuit, cast it in terms of the arguments that were made in this area. So since I’m obliged to make whatever rulings that I’m required to make on the basis of what occurred during the trial, not on the basis of how the Seventh Circuit may view the trial record, I am very keenly interested in your walking the Court through that area.
And I appreciate the transcript is laced with Mr. Zievers’ concerns about Mr. Du-mont’s testimony beginning before jury selection started. And it was addressed again later in the trial, I believe on the third day, on more than one occasion and then as far as I’m concerned it was mysteriously dropped. So I will give you whatever amount of time you want to peruse the transcript and provide an answer as best you can to that question.
MR. WOOD: Your Honor, referring to the government’s brief, appellee’s brief in the Seventh Circuit, on page 14 the government states, quote, “The government alleges Du-mont through counsel asserted his Fifth Amendment privilege for self-incrimination and, therefore, was unavailable to testify.” I believe also that Mr. Zievers filed a brief with the Court at the Court’s request outlining the legal basis upon which the statement could be offered. I don’t believe that Mr. Jacobs filed a brief in response to that and so I would argue that at this point the issue has been decided against the government’s position.
THE. COURT: All right. I’ll give you an opportunity to look at the transcript. In response to your last question, I totally disagree. The government can make all the concessions that it wants but it is the Court’s rulings that are at issue, not anyone’s concessions. And I have to tell you at the outset when I received the Seventh Circuit’s last opinion, that is the one found at 56 F.3d 798, I had more than passing concerns about some of the comments that were made in the context of that opinion beginning in the very first paragraph of Judge Wellford’s decision. About halfway through the paragraph he indicates, quote, “The District Court granted Nagib’s motion and ordered a new appeal.” Nothing could be further from the truth. In addition, there’s a comment that appears on page 804 of the decision adopting what you have just suggested, namely, that the government concedes that Mr. Dumont asserted his Fifth Amendment privilege and was, therefore, unavailable to testify. I don’t find that finding by the Court anywhere in the transcript.
In addition, the Seventh Circuit in Judge Wellford’s opinion on page 805 suggests that the District Court describe the government’s proof against Mr. Nagib as, quote, “not frankly the strongest case in the world,” close quote. If one goes back to the trial transcript where that quote was taken from it was taken in conjunction with my comment to Mr. Reilly with regard to the defendant’s Rule 29 motion made at the close of the government’s case. And once Mr. Atri and Mr. Nagib hit the witness stand the Court never took the opportunity either on or off the record to make any further comment about the strengths or the weaknesses of the government’s case.
But now that my comment has been taken grossly out of context I’m going to state succinctly for the record that the government’s ease changed incredibly dramatically as the result of the cross examination that these two defendants were subjected to. Moreover, on page 807 of the Seventh Circuit’s opinion the Court made the comment in the second or first full paragraph of the page that the statements of the airline employee about Nagib’s actions at the ticket counter were somewhat ambiguous. I have reread Sandy Prox’s testimony as against that comment and find her testimony to be anything but ambiguous. And so when I read comments like this in an opinion the antenna go up and I frankly took Judge Posner’s lead from the dissent that he wrote in the opinion in this case back in January of last year in which he took the opportunity to review some briefs that were filed in connection with the earlier appeal. And I obtained copies of the briefs that were written in connection *663 with this ease and I can understand why the Court may have included the language that it did, particularly against the backdrop of the statements being made on behalf of Mr. Na-gib literally going unchallenged by the government in its response.
And while the Court of Appeals is not engaged, in the words of Judge Easterbrook, in archeological digs to ferret out the facts, I as the trial judge in this case am not simply going to sit idly by and be hoodwinked when my independent recollection and the actual transcript as transcribed of this case simply does not square with some of the suggestions that were made in conjunction with this appeal. So it is against that backdrop that I put this and other questions to you about what occurred in connection with the trial record. And in the same vein I do not find anything in the trial record to suggest that Mr. Nagib’s counsel much less marked let alone made a proffer of Mr. Dumont’s answers to questions made in the Rule 11 colloquy-
And until I have a better understanding of where it is in the record that some of these facts are being derived from I am simply not going to be pushed into the corner to make rulings consistent with the Seventh Circuit’s opinion if the underlying facts in this case simply do not square with what the Court of Appeals perceived the facts in the ease to be. And so I want to give you every opportunity to lay those out both from the government and the defense standpoint. Certainly there are a number of facts that have never been addressed in any of the Court of Appeals’ opinions much less counsels’ briefs.
For example, Government Exhibit No. 27A in which Mr. Nagib acknowledged on cross examination as having been the author of certain writings on a envelope that included what anyone conversant in drug trafficking would readily conclude were drug notes, these were addressed in both cross examination and redirect of Mr. Nagib. They were addressed by counsel in closing arguments but, yet, no one chose to address that subject in the context of the more than circumstantial evidence against Mr. Nagib. Similarly, there are serious flaws in the delineation of the facts in this case by both sides noting that no one pointed out to the Court of Appeals the fact that Mr. Dumont and Mr. Atri while they shipped this box by United Airlines they themselves chose to fly on US Air. That is, they did not even use the same carrier. And a compelling argument can be made that that was done for only one reason, and that is to be as distant as possible from the box in question.
At the same time there are holes in the factual presentation of the facts relating to the relationship between Messrs. Atri, Du-mont and Nagib with reference to the van, with reference to their activities following the concert on what no doubt was the evening of September the 13th. How many people were in the room, et cetera, et cetera. And as I say, when there are these serious flaws in the recounting of what was presented to this jury factually, not dealing with what was conceded by anybody in the Court of Appeals, that’s not the record that I’m looking at. I’m looking at the record that was made at the trial in this case that occurred during the week of March 5th of 1990. Not any gloss that any lawyer wants to put on those salient facts.
So it is against that backdrop, as I’ve said earlier, that until these facts are nailed down in a cogent manner I’m not in a position to give either side the benefit of a ruling with regard to those two issues because it may well be that at least the first issue is a non issue in this case because there was no record made with regard to Mr. Dumont not being available and similarly there was no record made with regard to his statement in terms of counsel either making a proffer outside the presence of the jury. There was never any culling of exactly what statements Mr. Zievers sought to have admitted. And, frankly, as against the testimony of Sandy Prox who said what at the counter any lawyer worth his or her salt probably would not have sought to admit Mr. Dumont’s statement because they don’t square with what Sandy Prox had to say.
And it may well have been a matter of trial strategy that Mr. Zievers abandoned the entirety of that matter because at the conclusion of the March 7th trial date Mr. Walrath *664 who sat in court all afternoon made a comment at the end of the day about what was happening insofar as his client is concerned. And I’m now referring to page 662 of the trial transcript, and in response to his comment I stated, quote, “Well, I would suggest you take it up with Mr. Zievers in light of the case that I brought to counsel’s attention which apparently you have also, Mr. Walrath. The witness hasn’t been proffered so I’m not going to assume that Mr. Zievers is going to continue to press the matter. I would suggest that you talk to him and perhaps you can work out some schedule to take the matter up in the morning or have another member of your office appear if that be required.”
To my knowledge that is the last that we heard during the trial of this matter about Mr. Dumont, and earlier that afternoon the matter of the statements that Mr. Dumont made during the course of his change of plea. It is certainly true that I indicated on page 594 of the transcript that the Court was prepared to grant the motion to quash, but that comment was made in the context of where the Court stood. At that juncture there was never a formal order entered and in point of fact my last comments before we took our afternoon recess as appears on page 595 of the trial transcript, it reads, quote, “So if you are prepared to deal with that at the appropriate time I at least want you to be aware of the authority that the Court is working with at this point.” So how any reasonable lawyer or client or judge can infer from what I’ve just adverted to that somehow the Court first found that Mr. Dumont was not available and, second, that if he wasn’t available that the Court could not receive Mr. Dumont’s testimony is frankly more than I can fathom from the trial record.
Now, if in all of my comments you genuinely believe that you need more than this afternoon to deal with these and some of the other issues, I’m certainly willing to grant whatever reasonable time you may need to deal with these subjects, because speaking for Mrs. Nagib for a moment, I am sure that this ordeal has been an incredible nightmare to the Nagib family. Perhaps to the lawyers, too, given some of the comments that were made in the past opinions by the Seventh Circuit. And fundamentally whatever needs to be done here it is going to be done the right way on the basis of an adequate factual record. And while I have certainly pointed all of you to some of the Court’s concerns in these areas I certainly don’t want to run roughshod over Mr. Nagib’s rights.
But as I’ve stated, we are not at a juncture in this case where I am at all comfortable much less prepared to deal with the menu that the Court of Appeals sent back by way of remand, simply because I don’t believe the facts as they found them are supported in the trial record. So you may take a few minutes and discuss among yourselves how you want to proceed and let Mr. McHenry know what your desires may be. We have fairly, well, we have no trials for the next couple of weeks. We do have some time that I could address this again next week or perhaps the week after. But as I say, we’re not there yet.
MR. WOOD: Your Honor, we would like to take you up on your offer to file supplemental briefs, to look at the questions that you’ve raised and to file something with respect to those questions factually, as well as the issue of the government’s waiver which we believe would come into play at this point. So we would request if it’s at all possible 30 days to file a supplemental brief.
THE COURT: That’s certainly agreeable with the Court. And assuming for the sake of argument that the government has waived its position, how is the, this Court supposed to deal with that when there was no waiver in the trial record, assuming my position is correct. I must admit like any case these matters don’t get any better with age. And while I remember a lot of the facts I didn’t remember all of them in intimate detail. But when one sees an opinion laced with some of the comments that I adverted to the antenna go up and I have taken the opportunity to go back and study with care much of the testimony particularly as it relates to the issues that I brought to the fore this afternoon. So you all may want to do likewise. And I’m not suggesting at this juncture I’m right and you and the Court of Appeals are wrong, but *665 I think there’s certainly enough fodder here to call much of what the Court of Appeals wrote into question. And I want to resolve that before addressing the merits of your respective positions.
So your request for a 30 day opportunity to file supplemental materials will be granted. The government will have 20 days after the receipt of those materials to file any supplemental materials that it wishes to file. And following that I will give you the benefit of another opportunity to argue your positions before I issue any decision, whether it be in open court or a written decision.
MR. WOOD: Thank you, Your Honor.
THE COURT: Court stands in recess.
(Afternoon proceedings concluded at 2:01 p.m.)